No. 90.—BROWN, SHIPLEY & Co. *vs.* P. A. CLAYTON, defendant in error.

[1.] Attachment will lie for a sum certain, stated in the affidavit to be a balance due on account of the sales of cotton, in the hands of the plaintiff's agents.

[2.] It is not necessary that the attachment bond should be attested by the Magistrate who issues the attachment. If duly executed, although attested by another Magistrate, it will be sufficient, if the Magistrate who issues the process, certifies therein, that bond and security were given in pursuance of the Statute.

Brown, Shipley & Co. vs. Clayton.

[3.] A principal is liable to his factor for all commissions, expenses, advancements and disbursements made or accruing in the course of the agency, on his account and for his benefit. And the factor has also a lien upon the goods in his hands, and their proceeds, if lawfully sold for cash, or the securities for which they were sold, if sold on a credit, to secure to him such expenses, disbursements, advancements and commissions. Both the lien and the personal liability of the principal may be waived. The factor may detain the goods in satisfaction of his lien, or he may sue his principal for his commissions, disbursements and expenditures, and when himself sued by his principal, he may set them up in reduction of the plaintiff's demand, without pleading them as a set-off. But the liability of the principal goes upon the ground that they were made and incurred in good faith, reasonably and without any default, on the part of the factor.

[4.] The agent is bound to ordinary diligence, such as persons of common prudence use in relation to their own affairs.

[5.] In a suit, by the agent against his principal, for his expenses and disbursements, the defendant may show, in bar of his claim, the want of proper diligence, or neglect, on the part of the agent.

[6.] A consignee cannot abandon damaged goods, and thereby discharge the liability of the shipper for freight; nor can he, after receiving the goods, withhold a part of the freight for a partial damage, and thereby, to that extent, discharge the freight. If he receives the goods, he becomes, with his principal, liable for freight.

[7.] In an action of assumpsit, brought by the principal against the agent, for money in his hands, arising from the sale of goods consigned to him, if the defendant sets up in reduction of the plaintiff's claim, an account of expenses incurred by him in and about the fitting of the goods for market; it is not competent for the plaintiff to avail himself in rejoinder of the negligence of the agent. He must bring his action for damages.

[8.] To make an agent chargeable for negligence on the ground of omission, it must be an omission of some act which, according to law, he may rightfully do.

[9.] Whether an agent is guilty of negligence in not instituting a suit for the benefit of his principal, is a question for the Jury. Whether, in a given case, the agent shall sue or not, in the absence of instructions, is a question within his discretion; and he is not chargeable for not suing, except in cases where the legal right to sue, and the duty to sue, are clear and manifest.

[10.] Where the liability of ship owners and master, for damages done to goods at sea, is to the consignee, and he has failed to sue, that failure does not necessarily discharge the liability of his principal to him for expenses incurred in repairing the damage.

[11.] The owners of the ship and the master are liable for losses, to the shipper or the consignee, happening to goods shipped, as common carriers, ex-

cept so far as that liability is restricted by the terms of the charter-party, or bill of lading, or by Statute.

They have a lien upon the goods for freight, and may detain them for payment; whilst they, at the same time, have recourse personally, upon the owner of the goods, unless the lien and the personal liability of the owner are waived or modified, in the contract of shipment.

[12.] They are not liable for any deterioration of goods arising from causes inherent in the goods themselves, when they are not in default, although such deterioration is not caused by perils of the sea, the act of God, or the King's enemies.

[13.] It is the duty of the consignee to account to his principal for the quantity of goods upon which he pays freight. That is, he must show the disposition of the whole.

[14.] When the consignee has rendered an account of the sale of goods, with expenses and disbursements thereon, &c., and has paid the amount reported due, and his principal brings suit for a balance of proceeds of the goods alleged to be due, the plaintiff is not entitled to interest.

Attachment, in Muscogee Superior Court.    Tried before Judge IVERSON.    November Term, 1852.

This was an action founded on an attachment from Muscogee Superior Court, upon the following state of facts : In the year 1836, the plaintiff in the Court below, shipped through Harper & Holms, at Apalachicola, Florida, five hundred bales of cotton.    In the Fall of that year, they, the consignees, sold the 500 bales of cotton, and sent to Clayton an account of sales, by which they acknowledge that they have in their hands a balance to Clayton's credit.    Clayton having, by the testimony in the record, drawn out all the balance remaining in the hands of Brown, Shipley & Co. save about £21, 5s. 11d.    Clayton being dissatisfied with the amount rendered, sued out an attachment against the said Brown, Shipley & Co. and upon the trial of said cause, the Jury found a verdict for the plaintiff.

Before the case was submitted to the Jury, defendant's counsel moved the Court to dismiss the attachment, upon the ground that the affidavit was insufficient to authorize the issuing of the attachment, because that portion of the affidavit excepted to, was in the following words :    "That Brown, Shipley & Co." (having previously stated the names of the different mem-

Brown, Shipley & Co. *vs.* Clayton.

bers of the firm,) "are indebted to him, deponent, in the sum of twelve hundred and thirty-two dollars, fifteen cents, besides interest and exchange between Columbus, Geo., and New York City, and between New York and Liverpool, in England, on account of the balance of that amount of proceeds of 500 bales of cotton, recieved and sold by said firm, for said deponent, as his agent, and which had not been accounted for; and that said defendant resided out of said State, &c.;" and because the bond given was not attested by the Magistrate who issued the attachment; which said motion to dismiss, the Court overruled. After verdict, the defendant moved for a new frial, upon the grounds—

1. That the Court erred in overruling the demurrer of the defendants, to the sufficiency of the affidavit and bond on which said attachment was issued.

2. Because the Court erred in rejecting so much of the evidence of Isaac R. Nash, as was derived from books.

3. Because the Court erred in charging the Jury, that if the cotton shipped by plaintiff was ship-damaged; in other words, if the damage upon which occurred the defendant's claim for canvass, twine and mending," happened between the ports of Apalachicola and the ports of Liverpool, after the cotton was received on ship-board, and after the bill of lading, read to them, had, in fact, been given for it, then the ship or carrier of the cotton was liable therefor, and not the plaintiff; and that the shipments of the plaintiff, in the hands of the defendants, was not, in any manner, to be charged therewith."

4. Because the Court erred in charging the Jury that the defendants must *account* to the plaintiff for the number of pounds of cotton upon which they paid freight.

5. Because the Court erred in charging the Jury that the plaintiff, if entitled to recover anything, was entitled to recover interest thereon.

6. Because the verdict included interest upon unliquidated damages, and is contrary to law and evidence.

Which motion was overruled by the Court, on all the grounds therein stated; and to which overruling by said Court, the coun-

sel for the defendants excepted, and their several rulings and decisions are, in this cause, assigned for error.

H. HOLT, for plaintiffs in error.

JONES, BENNING & JONES, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The demurrer to the affidavit and bond, we are satisfied, was properly overruled. The Statute does not specify upon what character of indebtedness attachment shall issue. It authorizes it to be sued out, upon complaint on oath, that the complainant's debtor resides out of the State, &c. &c. He who is the debtor of another is liable to it, if in any one of the positions mentioned in the Act. It is not necessary that the debt, be evidenced by bond, or note, or balance of account acknowledged. It must be an indebtedness upon the face of the statements made in the affidavit. If the plaintiff swears to a debt it is sufficient. The technical idea of a debt may be, as claimed, a liquidated sum ; but this Act does not contemplate that kind of indebtedness alone. An amount of indebtedness must be stated. Here that is done. The plaintiff swears that the defendants are indebted to him in $1,232 and 15 cents, besides interest and exchange, on account of a balance of proceeds of sale of cotton effected by them, as his agent. It is then a debt due upon account, and attachment will lie for that kind of debt.

[2.] The objection to the bond is, that it was not taken by the Magistrate who issued the attachment. It is attested by a Magistrate officially ; it appears with the other papers in the record ; and the Magistrate who issued the attachment, recites in the attachment itself that the bond and security were given in pursuance of the law in such cases made and provided.

Now, the Attachment Law authorizes any Judge of the Superior Court, or Justice of the Inferior Court, or Justice of the Peace, to issue the attachment, *provided,* that the Judge, Jus-

Brown, Shipley & Co. *vs.* Clayton.

tice or Magistrate, before issuing it, shall take bond and securi-
ty, &c.

To hold, that this proviso meant to say that the attachment
should not issue, unless the bond is attested by the same Mag-
istrate that issues the process, would be an unnecessarily literal
construction.   The position of counsel must go this extent, or
it falls short of any force.   The duty of the Magistrate clearly,
is not to issue the attachment, unless the bond is given.   He
must see to it that a bond is given, and if it is not given, the
process is a nullity.   But he *takes a bond*, when a bond duly
executed is presented to him, before he issues the process.
When such a bond is given, the Statute is substantially complied
with.   That it was complied with in this case, is proven by the
bond itself, signed, sealed and attested; and that it was given
*before* the attachment issued, is proven by the official statement
of the Justice of the Inferior Court, who attested the process.

The object in requiring a bond at all is, for the protection of
the defendant against costs, and to secure him in his damages,
in the contingencies mentioned in the Statute.   To this end, a
bond is a condition precedent to the use of the remedy by at-
tachment; and that it may be a sufficient bond, the Magistrate
issuing the attachment is required to take it.   He can as well
judge of the sufficiency of the bond, when it is attested by an-
other, as when he himself attests it.   He is presumed so to have
considered it; and to have held, in his judgment, that the bond
was sufficient to authorize him to issue the process.   I cannot
hold that any attestation of the bond is indispensable.   Why
not a good bond, without the attestation of a Magistrate?   The
Statute does not require any attestation.   The true test of the
regularity of this procedure, is this—are the defendants protect-
ed by the bond?   If the bond can be enforced, they are; and
it does not seem to me, to admit of a question, that a defence
to a suit on this bond, founded on the fact that it was not exe-
cuted before the Magistrate that issued the attachment, would
be unavailing.

The exception founded on the exclusion of a part of the tes-
timony of the witness, Nash, was abandoned in the argument,

VOL. XII 72

and the other exceptions grow out of the charge of the Court. The presiding Judge instructed the Jury, "that if the cotton shipped by the plaintiff, was ship-damaged; in other words, if the damage, upon which accrued the defendant's claim for canvass, twine and mending, happened between the port of Apalachicola, and the port of Liverpool, after the cotton was removed on shipboard, and after the bill of lading had been given for it; if they believed from the evidence that the bill of lading, read to them, had in fact been given for it; then the ship or carrier of the cotton were liable therefor, and not the plaintiff; and that the shipments of the plaintiff, in the hands of the defendants, were not, *in any manner, to be charged therewith.*" This charge, when analyzed, contains two propositions, which it is important to separate. The first is, that if the cotton shipped by the plaintiff, Clayton, received the damage upon which the defendant's claim for canvass, twine and mending, is based, after it had been shipped, and after the bill of lading was signed, then the ship or carrier is liable for the damage. The second is, that if the damage was received after the shipment, and after the signing of the bill of lading, then, neither Clayton nor the shipment in the hands of the defendants are in any manner liable to be charged therewith. To do justice to the case, a statement of the facts and the condition of the pleadings, when the case went to the Jury, is desirable. Briefly, then, Mr. Clayton, through his agents at Apalachicola, shipped to Liverpool 500 bags of cotton, and consigned it to the defendants below, Messrs. Brown, Shipley & Co. The bill of lading, signed by the master, contained a stipulation that the consignees should pay the freight at an agreed rate, at Liverpool, upon delivery. The consignees advanced to Mr. Clayton the greater part of the value of the consignment before it was sold. Upon the ship's arrival at the port of Liverpool, they paid the freight, and took charge of the cotton, and sold it, and rendered to Mr. Clayton an account of sales, reporting, after deducting expenses and commissions, a balance to his credit. This balance he drew for and received. Believing that Brown, Shipley & Co. were still indebted to him on account of this shipment of cotton, Mr. Clay-

ton sued them by attachment, for upwards of $1,200. The defendants pleaded the general issue and payment. Upon these issues, the case went to the Jury. Upon the trial al, it was farther proven, that when the cotton was received at Liverpool, by the defendants below, it was very much damaged, and that they expended, in fitting it for market, some eighty pounds sterling. The expenditure was in canvass, twine and labor, mainly.

[3.] The relation of these parties, is that of principal and factor. · Mr. Clayton consigns to his factors, in Liverpool, a cargo of cotton; they accept the consignment, and act upon it. In closing the transaction, they charge him with a bill of some eighty pounds, for expenses incurred in fitting the cotton for market. The question is, is he liable to pay them? A principal is liable to his factor for all advances, expenses and disbursements made in the course of the agency, on his account, or for his benefit. It is the right of the agent to be reimbursed in all such outlays, and it is the obligation of the principal fully to pay all incidental charges for warehouse room, duties, freight. general average, salvage, repairs, journeys, and for other acts done to preserve this property, and to enable the agent to accomplish the objects for which the agency is created. Such right and such obligation necessarily grow out of the nature of the relation between principal and agent. *Paley on Agency, by Lloyd*, 107, 108, 110, 111, 112, 113, 124. *Smith on Merc. Law*, 55. 3 *Chitty on Com. and Man.* 222, 223. 2 *Liv. on Agency*, 13 *to* 16. 11 *Johns. R.* 439. *Story on Bailm.* §§196, 197, 357, 358. *Story on Agency*, §335.

And in every agency, there exists in the agent a particular right of lien for his commissions, advances, expenditures and services in and about the property entrusted to him, whenever they were proper or necessary, or incident to the agency. Factors have a general lien upon every portion of the goods of their principal in their possession, and also upon the price of such as are lawfully sold by them, and the securities given therefor, for the charges and disbursements arising upon those particular goods. *Paley on Agency, by Lloyd*, 128, 129, (*note*.)   2 *Kent's Com.*

640, (3d *edition.*) 2 *Livermore on Agency*, 38. 3 *Chitty on Com. and Man.* 544, 545, 546. *Smith on Merc. Law*, 338, 339. *Ambler*, 252. 5 *B. and Ald.* 22, 31, 32. 1 *W. Black.* 104. *S. C.* 1 *Bur.* 489. 15 *Mass. R.* 389, 396. 1 *Mason R.* 9. 1 *Gallis.* 360. *Story on Agency*, §376. *Cowper*, 251. 3 *B. and P.* 449. Nor does the factor's right of lien merge the personal responsibility of the principal, unless that be waived by contract, or the waiver be inferred from circumstances. *Dunlap's Paley on Agency*, 127. 1 *Gallison*, 360. 1 *Mason*, 9.

Then, we say, that it is generally true that a factor is entitled to reimbursement from his principal, for all disbursements and expenditures made and incurred in carrying into effect the purposes of his employment, and that he has a lien upon the property of his principal, in his hands, and upon the proceeds of such property, if lawfully sold, and also upon securities in his possession, taken for the property, if sold on a credit, to protect him in his expenditures and disbursements. He has the right to detain the property, or its proceeds and securities in satisfaction; or he may sue his principal for them, and if himself sued by his principal, for money in his hands, claimed to belong to him, and growing out of his agency, he, the factor, may prove his disbursements or expenditures, without pleading them. This last proposition goes upon the idea that the balance only, after deducting expenditures, &c. is the debt due to his principal. This is the Common Law rule. The pleas in this case, were the general issue and payment; no set-off was pleaded, and no question made on the pleadings. *Dunlap's Paley*, 125, 126, (59 *notes.*) 4 *Burrow*, 2133. 6 *Vesey*, 142. 1 *T. R.* 102.

There is no waiver, either of lien or of the personal liability of the principal, in this case; it is proven that the expenditure was made upon the cotton, and with a view to render it marketable, and that to sell the cotton, was the duty with which the factors were charged; and it was further proven, that if the cotton was in the condition represented by the witnesses of the plaintiffs in error, the charges are reasonable.

In the view which we take of this question, it is not necessa-

ry to affirm or deny the proposition that the ship owners were liable for the damage done to the cotton.   The evidence as to the damage, is conflicting.   According to the bill of lading, the cotton was shipped in good order; that it was shipped in good order, was also proven by witnesses who inspected it, before it was shipped.   The cause of the damage, and the time when it occurred, were questions also of inference for the Jury, from the character of the injury, as described by the witnesses.   The testimony of one or two of the witnesses of the plaintiffs in error, further, was that the cotton was country-damaged; that is, as I understand them, the damage was received, in the passage of the cotton from the interior to the port of export, and before it was received on board ship.   It is therefore, not unequivocally proven that the damage occurred at sea, after the shipment. Let it, however, be conceded that, according to the facts of the case, the judgment of the law would be that the ship owners were liable to make good this damage; yet that concession does not yield the point that the owner of the cotton is not liable to reimburse his factor, in the disbursement which that damage made necessary.

The ship owners and master may be liable for the damage, and the owner of the cotton may be at the same time liable for the expenditure.   This is a question, not between the shipper and the owners and master, or between them and his factor, but between the factor and his principal.   I am prepared also to go one step farther, and to say, that it may be conceded that the liability of the ship owners and master, is to the factor, and that he alone could sue them for the damage; yet the principal may, notwithstanding, be liable, in the case here made, for the disbursement.

[4.] And this statement brings me to the real point in this case, and that is this, to wit: in an action at Law by a principal against his agent, for money in his hands arising from the sale of property consigned to him for sale, when the agent sets up and proves expenditures made in the execution of his agency, in the reduction of the plaintiff's demand, can the plaintiff reply, in denial of that claim, the negligence of the agent in

not instituting suit for damages accruing to the property whilst in the hands of the carriers? As preliminary to the consideration of this question, it may be stated, as indisputable law, that the liability of a principal to his agent, for expenses and disbursements, proceeds upon the ground that they have been paid and incurred reasonably and in good faith, and *without any default on the part of the agent. Story on Agency*, §336. 2 *Livermore on Agency*, 14, 15, 16. 6 *East. R.* 392. *Smith on Merc. Law*, 56. *Paley on Agency, by Lloyd*, 109, 110.

The rule as to diligence is, that the agent is bound to ordinary diligence, such dilligence as persons of common prudence are accustomed to use about their own affairs. *Story on Agency*, §183.

We distinguish between the liability of the owners and master of the ship for the damage, and the liability of the shipper for the expenditure. We have seen that, as a general rule, the principal is liable for all expenses incurred in executing the agency. We have seen, also, that his liability even for expenses, depends upon the good faith and diligence of the agent. That is to say, the agent has no right to be reimbursed, if the expenses were occasioned by his neglect. It is, therefore, a question of diligence between the principal and his factor.

[5.] I have no doubt but that, in an action by the agent for expenses, the principal may defend, by showing that the expenses were occasioned by the plaintiff's negligence. The law creates no promise, on the part of the principal, to pay expenses which the agent, although acting in good faith, might have avoided by the exercise of ordinary diligence. Is this a case of that kind? Clearly it is not. The expenditures made upon this cotton were not occasioned by the consignees. They became necessary by no act of theirs. The damage had accrued when the cotton came to them. If injury results to Mr. Clayton, it is not by reason of any act of his agents. Receiving the cotton in a damaged condition, it was their duty to repair the damage and render it marketable. Had they failed to do this, they would have failed in a clear obligation of their trust, and would have been liable to their principal for the neglect. Had

they neglected to repair these cotton bags, and forced them on the market in their damaged condition, at a ruinous sacrifice, deep and loud and well founded, would have been the complaints of Mr. Clayton, and unquestionable would have been their liability. Were they incurred by their *negligence*? Have they omitted to do any act which, if done, would have avoided the expenditure, and thereby have saved their principal from the loss? The omission, to constitute negligence, which will relieve the principal from liability, must be of such acts as the law regulating the relation of principal and factor, requires the latter to do.

[6.] Were they guilty of neglect in not abandoning the consignment for the freight? It was not claimed that they were. It has been much mooted whether, when the goods become greatly deteriorated on the voyage, the consignee is bound to take them, and pay the freight, or whether he may not abandon them to the master, in discharge of the freight. The better opinion is, that he cannot abandon the goods, and thereby discharge the freight. 3 *Kent's Com.* 224, 225  3 *Johns. R.* 321. 1 *Bell's Com.* 570.  1 *Story's R.* 342, 353, 354.  *Pothier, Charte Partic. No.* 59.

[7.] This shipment of cotton sold for nearly $20,000, and the freight bill amounted to some $2200, and the damage, estimating it by what it cost the consignees to repair it, amounted to some $400. The idea, if it could be done, of abandoning for freight under these circumstances, is simply preposterous. But a more serious point was made in the argument, which my duty constrains me to notice. The consignees cannot recover, say the counsel; or rather cannot be allowed to retain the amount of repairs done to the cotton; because they were guilty of negligence in not withholding the freight to an equivalent sum. The answer to this proposition is that the law allows to the carrier his freight when the goods are delivered, irrespective of damage. The consignee has no legal authority to withhold freight as a satisfaction for damages. If he receives the goods, the law raises a promise to pay the freight, and if he does not do so, both he and his principal are liable for it. If the carrier and the

owners are liable for damage, the shipper and his consignee must resort to their action to recover them. If the consignee cannot abandon the goods entire, and thus avoid liability for freight (and we have seen that he cannot) *a fortiori*, he cannot receive them, and be relieved of the obligation to pay it on account of damage. This obligation to pay freight, grows out of the contract—it is entire, and cannot be apportioned. Uupon a bill of lading like this, in which freight is agreed to be paid upon delivery, a delivery is a condition precedent to the right to it, and upon delivery or tender, the freight is earned, and the shipper is liable for it. The carrier may retain the goods if it is not paid, or he may waive that, and rely upon the liability of both the consignee and the shipper, (if the shipper is also the owner) for his freight. In *Shields vs. Davis*, it was ruled that the consignee accepting goods, could not defend himself from the payment of freight, upon the ground that they were damaged by the master in the transportation. *The master*, said *Gibbs, Chief Justice, is liable to a cross action.* 6 *Taunton*, 65.

[8.] The question of negligence then, for not witeholding freight, has no legal possibility. The consignees received the goods; they became liable for the whole freight, and so did their principal, and they could not be in default for not doing what they had no authority to do. *Ch. Kent* says, "the ship owner performs his engagements, when he carries and delivers the goods. The right to his freight then becomes absolute, and the carrier is no more an insurer of the soundness of the cargo, as against the perils of the sea, or its own intrinsic decay, than he is of the price in the market. If he has conducted himself with fidelity and vigilance in the course of the voyage, he has no concern with the diminution of the value of the cargo. It may impair the remedy which his lien affords, but it does not affect his personal demand against the shipper." See 3 *Kent's Com.* 225. 3 *Johns. R.* 321. 1 *Bell's Com.* 570. 1 *Story R.* 342. 2 *Johns. R.* 327. 3 *Johns. Cas.* 93. 14 *Johns. R.* 138. 1 *Gallison R.* 360. 1 *Mason*, 9. 11 *Pick.* 481.

[9.] Again, it was insisted, that the plaintiffs in error were bound by the obligations of their trust, to have brought suit

against the carrier and the owners of the ship, for the damage done to the cotton, and having failed to do so, their negligence in this particular, is a sufficient reply for their claim for re-imbursement. Admitting that, in this regard, the plaintiffs in error were guilty of negligence, I do not see that that fact could be made available to the defendant in error, in this action. He, in that event, would be driven to his action against them for damages. This is an action of assumpsit for money in the hands of the plaintiffs in error, originating in attachment. It is not for damages, and cannot be for damages. Clayton here sues in assumpsit for the proceeds of the sale of a consignment of cotton. Brown, Shipley & Co. as rightfully they may, reply to their claim, their account for expenditures. Can he rejoin *their* negligence? The pleadings will not, in my judgment, authorize it. If it could be done, then the case would be an anomaly—it would present an instance of four issues tried in one cause, and one only of them upon the record. Thus, one is made on the plaintiff's account against Brown, Shipley & Co. and that is on the record—one upon their account, for their canvass, twine, &c. which is not upon the record, and a third upon his claim against them for damages, which is also not found upon the record. Nor do the issues stop here, for to his rejoinder of negligence, the plaintiffs in error would be entitled to surrejoin that this was not a case where the carrier and the ship owners were liable, and therefore, no negligence could be imputed to them, in not suing for the damage done to the cotton. Nor would that issue appear upon the record. If the defendant in error was allowed to defeat the plaintiffs' answer to his action, by proving their negligence, the record of this suit would not afford any evidence to support a plea of former recovery, filed to an action to recover damages for their negligence. Besides, how can Clayton recover unascertained damages in an action in assumpsit for money had and received? If Brown, Shipley & Co. by the facts of this case, are liable to Mr. Clayton, upon the score of an omission of their proper duty as factors, they can only be liable in an action brought to recover damages.

[10.] But, again, if it be conceded that the plaintiffs in error

might have sued for the damage to the cotton, yet did not, it does not follow that they are, therefore, liable to their principal, on the ground of negligence.   Because, whether they shall sue or not, in the absence of instructions to sue, is with them, a matter of sound discretion.   It is not like the ordinary cases of negligence——cases where the negligence consists in the failure to obey instructions, or in the omission of a duty necessarily to be performed in the very nature of the agency.   If an agent, for example, is instructed upon receipt of a bill of lading, to insure, and he fail to do it, and the shipment is lost, he is not only not entitled to his costs and compensation, but is liable to his principal for the value of the goods.   That is not this case.   He is bound, in this case, to good faith and ordinary diligence.   Whether the plaintiffs in error acted in good faith, or with proper diligence, must be determined in the negative, before they could be chargeable for negligence.   It is farther proper to say that, whether an agent has used proper diligence, is, for the most part, a matter of fact to be tried by a Jury, and is a question of great delicacy and difficulty, as it may be influenced by the general usages of trade ——the common habits of the particular business, and the special mode of dealing between the principal and his agent.   *Story on Agency*, §185.   And I venture to say, that no duty of the agent is more delicate or difficult to perform, than that of determining, in a given case, whether or not to institute a suit for the benefit of his employer, since it involves a personal hazard, in this, that if unsuccessful and unnecessary, he is not entitled to be reimbursed the expenses of such suit.   He must be sure of his ground for his own sake, and on account of his principal. To be liable for neglect for not suing, the facts must show that in law, he would have recovered had he sued.   Is it clear upon the facts of this case, that Brown, Shipley & Co. would have recovered against the owners and master of this ship?   I cannot say that it is.

[11.] The owners and master of a ship are liable, just as *common carriers,* except so far as that Common Law liability may be limited by the bill of lading, or charter party, and by Statute.   This bill of lading contains the usual exception of the dam-

age of the seas.   The owners and master then became liable, except for losses from   the perils of the seas—from the acts of God   and   the   King's   enemies.    The   severe   rule   of   the Common   Law   is   applicable   to   them.    2   *Kent's   Com.*   598, 599.    In England, the stringency of the Common Law has been released by Statute, as regards carriers by sea.    We have no Statute on the subject whatever.

Now, was the presiding Judge right, when he instructed the Jury,  " that if the damage upon which accrued the defendant's claim for canvass, twine  and  mending,  happened between the port of Apalachicola and the port of Liverpool, after the cotton was removed on shipboard, and after the bill of lading had been given for it, then the ship or carrier was liable therefor " ?    The responsibility of the  owners and the  master begins, it is true, when the goods are delivered to them.    The criterion of liability, the Judge declares, to  be the happening of the damage after the cotton was removed on board the ship, and after  the giving of the bill of lading.   This is not the legal test of liability.   The damage may happen at sea, and after the delivery of the  goods and the giving of the  bill  of lading, and yet the owners and master may not be  liable for it.   It may be occasioned by the perils of the  sea,  against which, by the  bill  of lading, the owner and master have  been protected.   I shall not undertake to say what is meant by  perils or  damage of the sea ;  that is not necessary.   I desire only to  show that the Court laid down the rule of liability too general.   *Story on Bailments*, §§512, 512 *a*, 513, 514, 515, 516, &c.   It is not a conclusion of the law that these carriers were liable, if the Jury found that the damage happened after the cotton was delivered and the bill  of lading was given, between the ports of  Apalachicola and Liverpool.   They may have been, but the  law does  not make them so, upon  the contingency mentioned by the Court.   And if so, it was clearly error to disallow the account  of the plaintiffs in  error, upon the ground that they were in  default  for  not  suing the master and owners for a damage so happening.

[12.]  The owners and carriers are not  necessarily liable, in every case of  injury to goods happening at sea, even when that

injury is not caused by a peril of the sea, or by the act of God or the King's enemies. If goods are shipped in good order, and by reason of *inherent causes, without default on their part,* deteriorate on the voyage, I cannot believe for a moment, that they would be liable to make good that deterioration. For example, a cargo of *oranges* shipped at Havannah for Liverpool, and decaying on ship-board. The language of Chancellor *Kent,* before quoted, to wit: " the carrier is no more an insurer of the soundness of the cargo, as against the perils of the sea, or its own *intrinsic decay,* than he is of the price in the market to which it is carried," asserts the true rule on this subject. 3 *Kent's Com.* 225. So that, whilst I do not say, that the owners and master might not be found liable for this damage, upon a full investigation into the causes of, and circumstances attending it, yet it is clear to my mind, that in passing upon the case, the Jury were not correctly instructed that they might consider them legally liable, if they found that the damage occurred between the ports of Apalachicola and Liverpool, after the cotton had been received, and the bill of lading given.

This erroneous instruction, induced the Jury to disallow the account of the plaintiffs in error. They disallowed it because they believed that they had been negligent in not instituting suit against the owners and master, and they doubtless held them negligent, because the Court instructed them that the owner and master were liable, if the damage occurred between the two ports, &c. The Jury had no alternative, because the evidence was clear that the damage occurred at sea, the cotton being proven to have been shipped in good order. That is, the injury to the cotton was *developed* at sea. I do not say, that it may not have been the result of intrinsic causes, or of latent causes, originating before it was shipped. Conceding, say the counsel for the defendant in error, that there was error in the charge of the Court, yet the Jury did, in fact, allow to the plaintiffs in error their account, and not being, therefore, injured by the charge, the cause ought not to be sent back. If the Jury did allow their account—if that is demonstrable from the record—the cause ought not to be remanded. But it is not. All that the

counsel for the defendant in error feel at liberty to claim on this head is, that about one-half of their account must have been allowed to them, and that being, say they, by the proof, an average allowance for repairs done to cotton shipped to Liverpool, they ought to be considered as paid.    It was in evidence that, if the damage to the cotton was such as it was said to be by the witnesses, then the charges for repairs were reasonable.    The plaintiffs in error were entitled to the whole of their account, according to the evidence.    And we are obliged to believe that they did not get it, because the Court erred in his instructions.    Whilst they may have disregarded the charge in favor of the plaintiffs in error, as to, say, one-half their account, yet they did regard it as to the other half, and to that extent, they are injured, by what we think was an erroneous administration of the law.    It follows, upon the principles herein stated, that the conclusions drawn by the Court below, that the plaintiff, Clayton, was *not liable* for the repairs to the cotton, and that the cotton itself, in the hands of the factors, was not in any manner to be charged therewith, were erroneous.

[13.] We do not consider that the Court erred in instructing the Jury that the plaintiffs in error must account to their principal for the number of pounds of cotton for which they paid freight to the ship.    We do not understand the Judge as saying that they must *pay* to him, the value of every pound for which he paid freight, but that he must show what became of the whole, as they received it.    They do account.    They show the weight of the cotton as received; its damaged condition; its repair, its sale, and the net proceeds.    This is a sufficient *prima facie* accounting.    Clearly, they were not necessarily bound, according to the freight weight.    How can that be, when it is the duty of an agent to prepare the cotton for market, and when that preparation often does, and in this case did, involve a diminution of the quantity?

[14.] The presiding Judge, we think, erroneously instructed the Jury that the plaintiff below was entitled to recover interest. When factors sell for cash, the rule is, that if they omit to render an account of the sale, when reasonably required, after the

sale is made, they will be presumed to have received the money, and will be accountable therefor; and in all cases of unreasonable delay, they are generally charged with interest, whether they have made interest or not.   3 *Chitty on Com. and Manuf.* 220.   *Paley on Agency, by Lloyd,* 49, 50.   9 *Pick.* 368.   8 *Vesey,* 72.   *Story on Agency,* §204.   The sales, in this instance, were for cash—the agents rendered, within reasonable time, an account of the sales, and after deducting . expenses, commissions and advances, reported a balance to the credit of their principal, which balance they paid promptly to his drafts.   We . see no ground for charging them with interest, upon the score of negligence, under the Common Law.   Now, if the plaintiff below is entitled to recover more than the amount which he has received, and it is for that he goes, it must be upon the ground of illegal charges for expenses and commissions—or of a false rendition of the account of sales—or some other ground of like character, involving an undetermined and uncertain issue; and, therefore, the claim is not of that character which, under our Statute, can bear interest.   The facts developed in the record show, that the plaintiff's recovery depended upon issues of that character.   They do not make a case for interest.

Let the judgment be reversed.