## WILENSKY *v.* CENTRAL OF GEORGIA RAILWAY CO.

A shipper, who is both consignor and consignee, can not maintain against a carrier an action ex contractu for the value of goods consigned to the carrier for shipment and not delivered, when the carrier tenders the goods at destination in a damaged condition but refuses to deliver them unless the shipper pays the usual freight charges, notwithstanding the damages to the goods amount to more than the freight charges, and the shipper demands that the damages to the shipment be offset against the freight bill; on the theory that the refusal to deliver under the circumstances is a breach of the contract of carriage.

> SEPTEMBER 26, 1911.

Question of law; from Court of Appeals. 2101.

*Jesse M. Wood,* for plaintiff.

*Payne, Little & Jones* and *M. F. Goldstein,* for defendant.

FISH, C. J. The Court of Appeals has certified to the Supreme Court the following question: "Can a shipper, who is both consignor and consignee, maintain against a carrier an action ex contractu for the value of goods consigned to the carrier for shipment and not delivered, when the carrier tenders the goods at destination in a damaged condition but refuses to deliver them unless the shipper pays the usual freight charges, notwithstanding the damages to the goods amount to more than the freight charges, and the shipper demands that the damages to the shipment be offset against

the freight-bill; on the theory that the refusal to deliver under the circumstances is a breach of the contract of carriage?" In *Brown, Shipley & Co.* v. *Clayton,* 12 *Ga.* 564 (6), this court held that "A consignee can not abandon damaged goods, and thereby discharge the liability of the shipper for freight." The point was directly involved in that case, and was learnedly and exhaustively treated by Nisbet, J., who pronounced the opinion of the court. He said: "It has been much mooted whether, when the goods became greatly deteriorated on the voyage, the consignee is bound to take them and pay the freight, or whether he may not abandon them to the master in discharge of the freight. The better opinion is, that he can not abandon the goods, and thereby discharge the freight." The following authorities were cited: 3 Kent's Com. 224, 225; 3 Johns. R. 321; 1 Bell's Com. 570; 1 Story's R. 342, 353, 354; Pothier, Charte Partic. No. 59. I quote further extracts from the opinion as follows: "The . . law allows to the carrier his freight when the goods are delivered, irrespective of damage. . . If the carrier and the owners [of the ship] are liable for damage, the shipper and his consignee must resort to their action to recover them. . . This obligation to pay freight grows out of the contract—it is entire, and can not be apportioned. Upon a bill of lading like this, in which freight is agreed to be paid upon delivery, a delivery is a condition precedent to a right to it, and upon delivery or tender, the freight is earned, and the shipper is liable for it. The carrier may retain the goods if it is not paid, or he may waive that, and rely upon the liability of both the consignee and the shipper (if the shipper is also the owner) for his freight." It is the contention of counsel for the shipper, who is also the owner, in the case now under consideration, that the doctrine announced in the case in 12 *Ga.* above cited, was overturned by the adoption by the General Assembly of Civil Code (1895), section 2287, which is as follows: "The carrier has a lien on the goods for his freight, and may retain possession until it is paid, unless this right is waived by special contract or actual delivery. This lien exists only when the carrier has complied with his contract as to transportation." The decision in *Brown* v. *Clayton,* 12 *Ga.* 564, was rendered in 1853, prior to the adoption of any Civil Code in this State. By an act of the General Assembly approved December 9, 1858, provision was made for the election of three commis-

sioners "to prepare for the people of Georgia a code, which should, as near as practicable, embrace in a condensed form the laws of Georgia, whether derived from the common law, the constitution, the statutes of the State, the decisions of the Supreme Court, or the statutes of England, of force in this State." The code prepared by the commissioners was adopted by an act of the General Assembly, approved December 19, 1860, but, by an act of 1861, it did not go into effect until January 1, 1863. That code contained a section (§ 2049) in the identical language of § 2287 of the Code of 1895, and each of the intermediate codes has contained a section with similar provisions. Section 2741 of the Civil Code of 1910 is the same as § 2287 of the Civil Code of 1895. This section did not have its origin in a statute of this State. It appears for the first time in the Code of 1863. It has, however, all the binding effect of an original act of the legislature, because of the adoption by the legislature of the codes wherein it appears. *Central Railway Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). It has been several times held by this court that a section of the code, not of original statutory origin, would be construed merely as a codification of the existing law, unless there be words in the section which manifestly demand a construction, which would change the rule in force at the time the code was adopted. *Brandon* v. *Pritchett,* 126 *Ga.* 286 (55 S. E. 241) ; *Mitchell* v. *Georgia & Alabama Ry.,* 111 *Ga.* 760 (36 S. E. 971, 51 L. R. A. 622), and cases cited. At the time of the adoption of the Code of 1863, the law on the subject now under discussion was, "that a consignee can not abandon damaged goods, and thereby discharge the liability of the shipper for freight," as had been decided by the Supreme Court in *Brown* v. *Clayton,* 12 *Ga.* 564, and one of the sources from which the commissioners appointed to prepare a code of the laws of this State were to seek the existing law was "the decisions of the Supreme Court." Are there any words in the section of the code now under consideration, which manifestly demand the conclusion that the codifiers intended to change the law as it previously existed? There is nothing in the section by which it can be contended that the doctrine announced in 12 *Ga.* was changed, unless it be the following language: "This lien exists only when the carrier has complied with his contract as to transportation." It certainly can not be successfully urged that it was ever at any time

held that the carrier could not retain goods transported by it until the usual freight charges thereon should be paid. It is contended, in effect, that as the duty of the common carrier is to transport goods received for carriage, safely and within a reasonable time, and as this duty, being imposed by law, becomes a part of the contract of carriage even though not expressed therein, it follows that if the goods have been damaged by the fault of the carrier before reaching their destination, then the carrier has not complied with his contract as to transportation, and no lien exists on the goods for freight. If this be true, then the carrier would have no lien for freight on the goods if they should be injured in transportation by the carrier's fault to any appreciable extent, as the contract to safely transport, in such a case, would not have been complied with. Now how can it be logically contended that a carrier has a lien on goods transported which have been damaged by the carrier's fault in transit, when the freight on the goods amounts to more than the damage, but has no lien where the damage amounts to more than the freight? Could it be successfully urged, where the freight amounted to $100 and the damage by the carrier to the goods amounted to $99, that the carrier would have a lien for the entire freight, but if the damage amounted to $101, then no lien would exist? As was ruled in *Brown* v. *Clayton,* 12 *Ga.,* 575, 576, when the goods become *greatly* deteriorated on the voyage, the consignee is bound to take them and to pay the freight; "he can not abandon the goods and thereby discharge the freight    .    .    This obligation to pay freight grows out of the contract—it is entire, and can not be apportioned." The Code of 1863, § 2045, declared that "The common carrier is bound not only for the safe transportation and delivery of goods, but also that the same be done without unreasonable delay;" and this section has been embodied in all the subsequent codes. Therefore it is as much the duty of such carrier to transport goods without unreasonable delay as it is to safely transport them, and, as we have said, both of these duties being imposed by law, they become by implication a part of the contract of carriage. Civil Code (1895), § 2319 (Ib. (1910) § 2773), is in this language: "Where a carrier fails to deliver goods in a reasonable time, the measure of damages is the difference between the market value at the time and place they should have been delivered and the time of actual delivery." This section is a codification of the

rulings of this court in *Columbus & Western Railway* v. *Flournoy,*
*75 Ga.* 745; *Atlanta &c. R. Co.* v. *Texas Grate Co.,* 81 *Ga.* 602
(9 S. E. 600); *East Tennessee Ry. Co.* v. *Johnson,* 85 *Ga.* 497
(11 S. E. 809), wherein it was decided what damages are recover-
able against a common carrier for the breach of the contract of car-
riage in failing to deliver goods within a reasonable time. This
measure of damages by delay is exclusive. If the delivery of goods
has been unreasonably delayed by the carrier, the owner must sue
for the damage prescribed in this section of the code. He may not
abandon the goods and sue for their value. The title to the goods
in such a case remains in the owner. Mere delay in delivery does
not amount to a conversion by the carrier. Where the goods have
been merely damaged and not destroyed or lost by the fault of the
carrier in transportation, and their identity has not been substan-
tially destroyed, why does not the title to them still remain in the
owner? How can such damage amount to a conversion of the goods
by the carrier? Why can he abandon them in such a case and sue
the carrier for their value, when he could not do so if damage had
occurred to him by unreasonable delay in the delivery of the
goods? If he must accept the goods when tendered and pay the
freight when he has been damaged by an unreasonable delay in their
delivery, why should he not be required to do the same thing when
he has been damaged by injury to the goods caused by the fault of
the carrier in transportation? No satisfactory reason occurs to us
for making a distinction in the respects indicated between the two
cases. Of course I do not mean to hold that the same rule as to
the measure of damages is applicable to the two cases; but what I
urge is, that, as the code fixes the measure of damages in case of
delay, no action will lie in such a case for the value of the goods,
and that unreasonable delay in transportation and delivery is as
much a breach of the contract of carriage as damages in transit,
and that there can be no valid reason for allowing the owner to
abandon the goods in the latter case and sue for their value, when
the damage is more than the freight, when he can not do this in the
former case. The section of the code declaring that the carrier
has a lien on the goods for the freight, and may retain the pos-
session until it is paid, unless this right be waived, and that this
lien exists only when the carrier has complied with his contract as
to transportation, has never been directly construed by this court

since its insertion in the first code. In *Breed* v. *Mitchell,* 48 *Ga.*
533, it was held, that, "Where goods arrive at their point of desti-
nation, and the packages or casks are, by the fault of the carrier,
in a damaged condition, so that they can not be handled without
loss or further damage, it is the duty of the carrier to repair the
casks, if possible, before the owner can be compelled to receive
them; and if he refuses to do this, the owner may refuse to receive
the goods and may recover the value, and this without offering to
pay the freight, since the carrier has not completed his undertak-
ing." In the opinion which was delivered by McCay, J., it was
said that "if a carrier has, by his fault, so injured the cask in
which a liquid is contained as that it can not be moved without
further damage, [then] he can not compel the owner to take it in
that condition. It is practically a total loss. If left as the car-
rier has by his fault made it, the loss will be total. This is not
like the case of rotting goods, or even of damaged goods. Here
the parties have provided a safe barrel to hold their oil, and the
carrier has damaged that barrel so that to move it will cause the
loss of the oil. It is capable of repair. . . As the carrier in this
case had something more to do, the freight was not demandable."
Here there is a clear intimation that where the goods shipped
are not practically or totally lost on account of the fault of
the carrier, but that they have been merely damaged, the freight,
upon the tender of the goods to the owner, would be demandable.
In *Robinson* v. *Dover &c. R. Co.,* 99 *Ga.* 480 (27 S. E. 713), there
was one shipment of two carboys of acid. One of them was lost,
and the railroad company refused to deliver the other until the
freight should be paid on both. It appears from the record in that
case, on file in this court, that the freight on both carboys amounted
to $2.90, and that the value of each carboy was $3.00, so that the
damage by the loss of one carboy was more than the freight on
both; yet it was said "Upon the carboy of sulphuric acid actually
delivered the carrier was entitled to a lien for the amount of freight
charges due, but the lien for freight charges attaches only to the
goods upon which the freight is actually due. The consignee ten-
dered the amount of freight charges upon the article of freight ac-
tually transported by the defendant, and was therefore entitled to
receive it; and inasmuch as no lien for freight due upon other goods
attached to the specific article demanded, it could not lawfully with-

hold from the consignee the possession of such article. . . As to the carboy lost, neither it nor the connecting line had completed the contract of carriage, and therefore no lien for freight could arise in favor of either company against the consignee for charges upon the goods which were lost." While the carrier has no lien for freight on goods lost in transportation, for the obvious reason that in such a case the contract of carriage was never completed, a different question arises when goods shipped have not been lost but merely damaged, and delivery is tendered to the owner in a damaged condition. As this court, in *Breed* v. *Mitchell,* and in *Robinson* v. *Dover &c. R. Co.,* supra, has clearly intimated that there is a difference as to the right of a carrier to demand freight on lost goods and goods merely damaged, and as it was held in several decisions of this court, after the codification of the section declaring that the "lien exists only when the carrier has complied with his contract as to transportation," that the measure of damages for delay in transportation and delivery was the difference in the value of the goods at their destination when they should have been delivered, and when they were actually delivered, which decisions were subsequently codified, and as there can be no good reason for a rule that would not allow the owner to sue for the value of the goods when he has been damaged by delay in their delivery, but would give him the right to sue for their value when they had been damaged in transit by the carrier's fault, I have reached the conclusion that the section of the code first appearing as § 2049 in the Code of 1863, containing the language last above quoted, and which has been embodied in all subsequent civil codes, was merely a codification of the then existing law as it had been declared by the decision of the Supreme Court in *Brown* v. *Clayton,* 12 *Ga.* 564; since, for the reasons above stated, there is nothing in the section which manifestly demands a construction that would change the rule in force at the time that code was adopted. It follows, therefore, that where property is injured in transportation through the negligence of the carrier, but the substantial identity of the property has not been destroyed by the damage, the owner, upon the tender of the property at its destination by the carrier, can not decline to pay the usual freight charges, refuse to accept the property, and sue for its value, though the damage may amount to more than the freight. Many good reasons occur to me in support of

the soundness of this rule, but I deem it unnecessary to state them, as I am satisfied to rest my conclusion upon the decision of this court in *Brown* v. *Clayton,* supra, where it was stated that while it was a much mooted question, it was decided that the better opinion is that the consignee is bound to take the goods, though deteriorated on the voyage, and pay the freight, and that he could not abandon them to the carrier in discharge of the freight. Counsel for the consignor, who is also the consignee, ask leave, in the event that the doctrine announced in *Brown* v. *Clayton,* 12 *Ga.* 564, was not changed by § 2049 of the Code of 1863, that such case be reviewed and overruled. After an examination of all the authorities I have been able to find on the subject, I am of the opinion that the correct rule was stated in that case, and that it should not be disturbed. The same rule prevails in England, as well as in some of the States of this Union. In 3 Hutchinson on Carriers (3d ed.), § 1365, it is said: "As a general rule, the doctrine that where goods are injured, the owner may abandon them as for a total loss, and sue for their value, does not apply to contracts of affreightment [citing *Silverman v.* Railway, 51 La. Ann. 1785, 26 So. 447]. The fact, therefore, that the goods are injured upon the journey, through causes for which the carrier is responsible, does not in itself justify the consignee in refusing to receive them, but he must accept them and hold the carrier responsible for the injury [citing Corso *v.* N. O. &c. R. Co., 48 La. Ann. 1286 (20 So. 752) ; Brand *v.* Weir, 57 N. Y. Supp. 731; Gulf &c. Ry. Co. *v.* Pitts, 37 Tex. Civ. App.· 212 (83 S. W. 727) ; Gulf &c. Ry. Co. *v.* Everitt, 37 Tex. Civ. App. 167 (83 S. W. 257) ]. Wherever, however, the damage is such that the entire value of the goods is destroyed, the consignee may refuse to receive them and sue the carrier for their value."

From what I have said the question certified to this court by the Court of Appeals is answered in the negative. I am authorized to say that Atkinson, J., concurs in the foregoing opinion.

LUMPKIN, J. I concur in the opinion that the question propounded by the Court of Appeals must be answered in the negative. The general trend of authority in the United States is to the effect that where goods are damaged by a common carrier in the course of transit, or where damages arise by reason of delay in transportation, the consignee has a right to demand delivery of the goods without paying the freight, provided the damages equal or

exceed the amount of the freight charge. Missouri Pacific Ry. Co. v. Peru-Van Zandt Implement Co., 73 Kan. 295 (9 Am. & Eng. Ann. Cas. 790, 794, and note, 85 Pac. 408, 87 Pac. 80, 6 L. R. A. (N. S.) 1058, 117 Am. St. R. 468). In all, or nearly all, of the cases on this subject, the action involved was one of replevin or trover to recover the goods or damages for conversion. No case has come to my attention where it has been held that the shipper or consignee could sue, not to recover the property or damages for its conversion, or for a breach of the contract of carriage, but on an implied contract on the part of the carrier to pay him the value of the goods. However it may be in other jurisdictions in the United States, I feel confident that no such action can be brought in this State, under the Civil Code (1910), § 2741, which has been brought forward since the original Code of 1863, and the decision from which it was evidently codified (*Brown, Shipley & Co.* v. *Clayton,* 12 *Ga.* 564). In that case Clayton shipped certain cotton to Brown, Shipley & Co. That firm sold the cotton and sent to him an account of the sales. He was dissatisfied with it, and the suit resulted. One question discussed by the court was whether the consignees were negligent in not abandoning the consignment to the carrier for the freight. It was said that "The better opinion is, that he can not abandon the goods, and thereby discharge the freight." There was a contention that the consignees were negligent in not withholding the freight charge to an amount equivalent to the damage. In fact the damage was less than the freight. But the decision was not placed upon that ground. In the eleventh headnote it was said: "The owners of the ship and the master are liable for loss, to the shipper or the consignee, happening to goods shipped as common carriers, except so far as that liability is restricted by the terms of the charter-party, or bill of lading, or by statute. They have a lien upon the goods for freight, and may detain them for payment; whilst they, at the same time, have recourse personally upon the owner of the goods, unless the lien and the personal liability of the owner are waived or modified, in the contract of shipment." In the opinion it was said (p. 575) : "But a more serious point was made in the argument, which my duty constrains me to notice. The consignees can not recover, say the counsel; or rather can not be allowed to retain the amount of repairs done to the cotton: because they were guilty of negligence in not with-

holding freight to an equivalent sum. The answer to this proposition is that the law allows the carrier his freight when the goods are delivered, irrespective of damage. The consignee had no legal authority to withhold the freight as a satisfaction for damages. If he receives the goods, the law raises a promise to pay the freight, and if he does not do so, both he and his principal are liable for it. If the carrier and the owners are liable for damage, the shipper and his consignee must resort to their action to recover them.

. . In Shields vs. Davis, it was ruled that the consignee accepting goods could not defend himself from the payment of freight upon the ground that they were damaged by the master in the transportation. The master, said Gibbs, Chief Justice, is liable to a cross action. 6 Taunton, 65." The volume cited is not accessible to me. But in 4 Camp. 119, I find what is apparently the same case, sub nomine Sheels v. Davies. In the report last cited it appears that the action was one of assumpsit for freight on account of a quantity of butter carried in a ship, and received by the defendant under the bill of lading. The defense proposed to be set up was that the butter had been injured, by bad stowage, to a degree much beyond the amount of the freight. It was stated that "Gibbs, C. J., held that the bad stowage of the goods was the subject of a cross action, and did not affect the right to the freight." If this is the same case cited from 6 Taunton's Reports, as authority in the Brown, Shipley & Company case, it involved damage in excess of the freight charged, and this fact shows clearly that this court was not dealing with the case because the amount of the damage was less than the amount of the freight, but on the ground that the carrier had a right to retain the goods until the freight was paid, unless he waived such right, and that this could not be destroyed by claiming damages for delay or bad stowage. The decision followed what the court considered the English rule on that subject. We need not stop to consider whether, under our statute in regard to recoupment, this rule has been so far modified as that, if the carrier should bring an action to recover the freight charge against the shipper or consignee, the defendant could recoup the amount of damages arising from failure of duty by the carrier. That is a different proposition from the question whether the carrier, upon every claim that unliquidated damages have arisen to the consignee greater in amount than the freight charges fixed by

contract or law, must waive his lien, deliver the goods, and rely upon a suit against the consignee, or else, though he may honestly contest the existence or amount of such damage, become, in effect, a purchaser of the goods, under an implied contract to pay their value, should a jury ultimately find the question of damages against him. I am aware that in some of the American authorities above mentioned the argument is strongly presented that if the amount of the damages exceeds the amount of the freight, the consignee should be allowed to claim that no freight is due, and that if no freight is due there can be no lien. If this argument be pursued to its logical end, however, and if a consignee can pay or extinguish freight charges by setting up unliquidated damages equal to them, it would seem that if the damages amount to one half or some other proportion of the freight charges, he ought to be allowed to extinguish such charges to that extent, tender the balance of the freight in money, and demand the delivery of the goods. If unliquidated damages are good as a payment or discharge in whole, apparently they should be good as a payment or discharge in part, if the balance is tendered in money. The suggestion is not met by the reply that the lien is entire and not apportionable. If it is discharged in full in damages plus money, this is as much a discharge as if made by setting up damages alone. But no case has come to my attention which holds that this can be done. In view of the decision in the case of *Brown, Shipley & Co.,* the fact that our code adopts the common law where not changed or modified, that the language of the code is that the lien exists only when the carrier has complied with the contract "as to transportation," and of the other authorities cited in the opinion of the Chief Justice, I am of the opinion that the decision in the *Brown, Shipley & Co.* case is binding, that what was said on this subject was not obiter dictum, and that the ruling there made has not been changed by the code. A request was made to review the case of *Brown, Shipley & Co.,* supra; but the requisite number of members of this court do not concur in the opinion that it should be reviewed and reversed, and, under the statute, it must stand.

EVANS, P. J., and HOLDEN, J. We concur that the question propounded by the Court of Appeals should be answered in the negative, but we are unable to give full concurrence to the reasoning of other members of the court by which they arrive at this conclu-

sion. At common law the carrier was entitled to receive his freight notwithstanding the goods may have been damaged in transit. This resulted from the application of the principle that unliquidated damages could not be set off against liquidated demands. But under the practice in this State, at least since the adoption of the first code, the defendant was given the right "to have a deduction from the amount of the plaintiff's damages for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract," and such deductions were pleadable "in all actions ex contractu where from any reason the plaintiff under the same contract is in good conscience liable to the defendant." Code of 1863, §§ 2851, 2853. Subsequently, by the act of 1878, the plea of recoupment was enlarged so that if the damages of the defendant exceeded in amount those of the plaintiff, the defendant was allowed to recover the excess. The English rule that in a suit for freight the defendant can not plead damages in reduction of the amount sought to be recovered or have a judgment for the excess, if the damages exceed the freight, has been changed by our statute, and no reason occurs to us why a rule founded solely upon an artificial rule of pleading should be adhered to, when such rule has been abrogated or repudiated in this State. The right of the carrier to retain the goods depends upon his right to claim the freight. If the consignee owes no freight, then the carrier has no right to the possession of the goods. If the damage occasioned in the performance of the contract of transportation equals or exceeds the freight, then the carrier's lien for freight is lost, and he has no right to the possession of the goods; and an action of trover may be maintained for their recovery, without payment of freight. Missouri Pacific Railway Company *v.* Peru-Van Zandt Implement Company, 73 Kan. 295 (85 Pac. 408, 87 Pac. 80, 6 L. R. A. (N. S.) 1058, 117 Am. St. R. 468, 9 Am. & Eng. Ann Cases, 790) ; Dyer *v.* Grand Trunk R. Co., 42 Vt. 441 (1 Am. R. 350) ; Moran *v.* Northern Pacific R. Co., 19 Wash. 266 (53 Pac. 49, 1101) ; Boggs *v.* Martin, 13 B. Mon. (Ky.) 239; Cutting *v.* Grand Trunk R. Co., 13 Allen (Mass.), 381; Miami Powder Company *v.* Port Royal &c. R. Co., 47 S. C. 324 (25 S. E. 153, 58 Am. St. R. 880) ; 1 Jones on Liens (2d ed.), § 331. But it does not follow that because the consignee or consignor may recover the goods in an action of trover he is entitled to abandon them to the carrier and

sue in assumpsit for their value. The right of the consignee to the possession of the goods, without the payment of freight, where the damage equals or exceeds the freight, is one thing; and the right of the consignee to abandon the goods under such circumstances and bring assumpsit for their value, based on a breach of the contract of carriage, is another thing. *Woodruff* v. *Zaban,* 133 *Ga.* 24.

We do not think any point actually decided in *Brown, Shipley & Co.* v. *Clayton,* 12 *Ga.* 564, precludes an action of trover for the recovery of the goods without the payment of freight where the damage to the goods caused by the carrier equals or exceeds the freight. That case concerned an action between a bailor and his factor, to whom goods had been consigned. The factor claimed credit for the freight which he had paid to the carrier, and the owner of the goods sought to have this claim disallowed because the goods had been damaged by the carrier in transit, contending that the factor was negligent in paying the freight without first adjusting the damage, which was less than the freight; and the ruling of the court was to the point that the factor was not so negligent, and was entitled to a credit to the extent of the freight which he had paid to the carrier.