McDonald J„
concurring.
This cause comes to this Court on many assignments of error. The judgment is reversed on one of the assignments only, and that being fatal to the case of defendant in error, who was plaintiff in the Court below, other grounds which had not been affirmed, were not considered by us. Some of them were not insisted on by counsel for plaintiff in error.
*67 The counsel for defendant in the Court below requested the Court to charge the jury, that, if the charter of the Planters and Mechanics Bank expired by its own limitation, on the 1st of January, 1857, such expiration extinguished the plaintiff’s debt, and that he cannot recover. The Court refused to give this request of counsel in charge to the jury, and the defendant assigned error on that refusal. A majority of the Court are of opinion that the request ought to have been given in charge to the jury, and, on that ground, reverse the judgment of the Court below. As a member of the Court dissents from the judgment rendered, it becomes my duty to deliver my ©pinion in writing, assigning my reasons for concurring in that judgment.
It is insisted that it has already been decided by this Court, that the personal liability of the stockholders in the Planters and Mechanics Bank of Columbus, survives the dissolution of the corporation, and that it is no longer an open question ; that the doctrine of “ stare decisis” requires that that adjudication should be implicitly followed, and that it cannot now be called in question.
In the case of Cain and Morris vs. Monroe, 23 Ga. 87, 1 expressed my opinion on that argument. I there said it was the duty of an appellate Court, of the highest obligation, if by its decision, it has established, as law, that which, it becomes satisfied, is not law, to annul its error, &c. Such Courts are established, not to make, but to expound the law. If, in any case,.it decides contrary to law, it substitutes error for law in that particular case, and if it adheres to it in subsequent cases, it establishes error as law. That would be a strange morality which would palliate error,- and commend a perseverance in it, while it condemned a correction of it.
If it be allowable to maintain an erroneous exposition of the law, it is when it has gone forth with such authority, and has been of such standing, that the community, in all.probability, have regulated their conduct and contracts by it. In such cases the Court having the power of reversal ought to *68 weigh well the consequences before it interferes, for if more mischief than good is to result from a change, and the error in the former adjudication is not most manifest and clear, it had better stand, however strong the inclination of the Judge’s mind may be against it. No case precisely like the one now before us has ever been before this Court. The cases approaching it most nearly are Moultrie et al. vs. Smiley, 16 Ga. Rep. 289, and the case of Moultrie et al. vs. Hoge, 21 Ga. Rep. 513. These suits were both against directors of the Commercial Bank at Macon,for excessive issues of banknotes, during their directory, for which excess the charter made them liable. The charier expired during the pendency of the actions, and that matter was pleaded in the first action as an extinguishment of the demand, which plea was stricken out by the Court, and error was assigned thereon.
In the latter action, counsel for the defendant requested the Court to give in charge to the jury, the expiration of the charter, as an extinguishment of the plaintiff’s demand. The Court refused so to charge, and error was assigned thereon. In the case of Moultrie vs. Smiley the judgment was affirmed. In the case of Moultrie vs. Hoge the judgment was reversed, overruling the other case. Those were cases against directors, and this is a case against a stockholder. There is a slight difference in the cases. If they were precisely parallel, the decision in the latter of the two cases would be a decision on the identical point now under consideration, and would-render the assignment of reasons for the judgment in this case unnecessary. The cases which have been passed upon by this Court, in regard to the stockholders’ liability under the charter of the Planters and Mechanics Bank of Columbus, after the judgment of forfeiture of the charter of that bank, cannot be considered as authority beyond the points made in-the record, and the decision thereof. It was insisted in those cases, that by that judgment of forfeiture, the corporation was dissolved, and the debts were thereby extinguished, and could not be collected from the stockholders. The Court decided *69 that the remedy of the billholder against the stockholder, survived the dissolution of the corporation, and that he might assert it both before and after its final dissolution. The language of the Court goes beyond the case made in the record, and would include a case of dissolution by the expiration of the corporation by its own limitation. It cannot be authority beyond the point the Court was called on to decide. Thornton vs. Lane, 11 Ga. R. 501.
I shall hereafter express my opinion of the difference of effect upon the corporation, its property and debts, between the judgment of forfeiture and a dissolution by the expiration of the charter.
Suffice it to say, now, that the decisions of this Court on this point, have not been made on the effect of a dissolution of the corporation by the expiration of the charter on the individual liability of its stockholders, but on the effect of the judgment of forfeiture of the charter on that liability.
I will now proceed to the consideration of the case as made in this record. The suit is on the charter. The plaintiff sets forth the provisions of the charter in respect to the liability of stockholders, alleges that he is a billholder, that he has sued and recovered judgment against the bank on the said notes, that he has had executions issued thereon, that the Sheriff has returned them “ nulla bona ” and'that an action has accrued to him against the defendant as a stockholder in said bank, &c. The charter has expired, and there is no provision therein for continuing the liability of the corporation or its stockholders, beyond the period of its existence.
Charters in this State are Acts of the Legislature, and when they fix a limit to the corporation which they create, they are necessarily temporary Acts, and unless they contain provisions for the continuance of their obligations, contracts and remedies, &c., after they cease to operate substantially for the purposes for which they were created, all the consequences ensue, which follow the dissolution of a corporation, at common law.
*70 The Acts creating the Planters and Mechanics Bank of Columbus, declared that it should continue until the first' day of January, 1857.
By the 11th section it is enacted, that “the persons and property of the stockholders shall be pledged and held bound in proportion to the amount of shares, and the value thereof, that each individual or company may hold in said bank, for the ultimate redemption of the bills or notes issued by the said bank, in the same manner as in common actions of debt, and no stockholder shall be relieved from said liability by sale of his stock, until he shall have caused to have been given, sixty days notice in some public gazette in this State.” The charter does not declare that this liability shall extend beyond the expiration of the charter, as fixed in the Act of incorporation. Shall it be so extended by the interpretation of the Act ? If there be nothing in the Act to justify it, I do not feel warranted in so expounding it. This is not the case of the construction of an Act of the Legislature, according to its reasons and spirit. That happens when a question arises whether a particular case falls within the reason and spirit of a statute, which is unquestionably in existence, and of full force and obligation, as to cases falling within its letter. But the point here is, whether a temporary statute can be extended beyond the limit of its existence; and if some temporary statutes may be so extended, whether the statute under consideration is one of that description. It is as well settled as any principle in the books, that if a penal statute be repealed, or expire by its own limitation, a person offending against its provision cannot be prosecuted and punished, unless there be some provision made in that or some other statute, authorizing it. If judicial proceedings be begun under the Act, they cannot be pursued. 1 Kent Com. 465, and notes; The Bank of St. Marys vs. The State, 12 Ga. 575. So well is the principle understood inEngland,that Parliament expressly enacts sometimes, that the statute shall continue in force after it has ceased to operate substantially, for the purpose of supporting *71 prosecutions against those who may have violated it during its existence. 9Bac. Ab. new ed. 223. There must be a reason for this rule, and the most satisfactory one is, that at the time of enforcing a right claimed under it, there is no law statute or common, to sustain it. If a statute giving a new right, creating a new liability, or imposing penalties for acts before innocent, expire or be repealed before the right becomes completely vested, the liability established and perfected by the final judgment of a Court, (and the same in regard to the prosecution for penalties,) so that the party complaining shall be compelled to resort to the repealed or expired Act to sustain his claim, there can be no law to support him. For if such, an Act be repealed or expire, it is precisely in such cases as if there had never been such an Act. The case must fail.
The case of Stevenson vs. Oliver, 8 Messon & Wellsby, 235, furnishes an instance of a completely vested right under a tempory statute. That was an action on an apothecary’s bill. The defense was,- that the plaintiff was not a qualified apothecary under the statute, and could not therefore recover for services rendered. The plaintiff relied, for his authority to practice, on a warrant as assistant surgeon in the navy, which he held on the 9th of September, 1825. That, he contended, was sufficient underthe statute of 6 Ga. 4 c. 133, sec. 4, which enacted that any person holding such warrant in the navy, army,&c., should be entitled to practice as an apothecary, &c. Against this, it was said he-could practice but one year, as the 11th section of the statute enacted, “that this statute shall take effect from and after the passing thereof, and shall continue until the 1st day of August next, in the year 1826.” It was held that although the Act was temporary, the right acquired under it was not; thatthe apothecary acquired a perfect right. By the Act, the right became perfect, and in suing for his apothecary’s bill, all he had to do was to show he had a warrant as assistant surgeon in the navy. All that this *72 case establishes is, that a temporary statute may confer a perfect title. Now, if the Act had entitled the plaintiff to a warrant in the navy as assistant surgeon, on certain terms prescribed in the Act, which he insisted he had complied with, and the persons having authority to deliver it to him, had refused to do it, and, in the mean time, the Act had expired, he could not have enforced the delivery, however unjustly and oppressively he may have been treated, because the statute on which he relied to enforce his right had expired. That case proves another thing: that the Judges who decided it, considered the effect of the expiration of a statute the same in civil suits as in criminal prosecutions, though, singularly enough, they misstated the law in regard to its effect on crimes and penalties, unless there be some English statute which changes the law, as expounded by the ablest Judges in that country and in this. We may probably infer that there are such statutes, from the authority in the 9th Bacon, to which I have referred.
If the plaintiff’s right depend on the statute, and the statute has expired as to the bank, how can it exist as to the defendant,, and entitle the plaintiff to recover against him ?
Without a provision to that effect in the charter, the existence of a bank cannot extend beyond the time specified in the Act of incorporation for any purpose, not even to save its debts from extinguishment, its personal effects from forfeiture, and its lands from reversion. The effect of its dissolution, according to all law, is the extinguishment of its debts. Mr. Kyd says, in his treatise on corporations, that “the effect of a dissolution of a corporation is, that all its lands revert to the donor; its privileges and franchise, are extinguished; and the members can neither recover debts which were due to the corporation, nor be charged with debts contracted by it in their natural capacities.” 2 Kyd Cor. 516. He expresses a doubt as to what becomes of the personal estate. It is the debts, however, with which tve have to deal. The principle is expressly recognized by this Court in Hightower vs. Thorn *73 ton, 8 Ga. 492. Judge Lumpkin in delivering the opinion of the Court expresses himself thus. “Upon the threshold-of this discussion, we are met with the common law principle : That upon the dissolution of a corporation the debts due to, and from it, are extinguished. A doctrine which results, necessarily, from the fact that the corporation having expired, whether by its own limitation, by surrender, abandonment of its members, or judgment of dissolution, there is no one in law to sue or be sued.”
Again in Thornton vs. Lane the same learned Judge delivering the opinion of the Court remarked, “ why so much time and talent, labor and learning have been employed to establish a proposition which nobody denies,” viz: “ That the debts of a’corporation, either to or from it, are extinguished by its dissolution, I am at a loss to comprehend. Certain it is, it was recognized by this Court at this place, more than two years ago, as it had been on more than one occasion previously.” There is nothing in the charter of this bank to a -ert these consequences on its dissolution by its expiration. It was the law of the bank on the day it was organized, and if no. subsequent act saves the debts from extinction, they are gone to all intents and purposes. However unreasonable and unjust it may be, such is the law, and those who administer it are bound so to expound it. Such was the effect of the expiration of the charter upon the debts of the bank, so far as the bank as a corporate body is concerned. It follows as a sequence that the liability of the stockholders for the debts is gone also, unless the statute declare otherwise, because the debt being extinct as to the bank which is principal, must be extinct as to the stockholder also, whose liability is secondary; and if it be a mere statutory liability, without reference to a contract of any sort, the liability must cease with the statute by which-alone it had an existence.This Court has held it to be a statutory liability, and not created by contract either expressed or implied. Lane vs. Morris, 10 Ga. R. 164; Thornton vs. Lane, 11 Ga. R. 497. There *74 is nothing in the statute which, by any legitimate rule of construction, could be held to extend the liability of the stockholder, beyond that of the bank. There is nothing in the 11th section of the Act which points to it, but the contrary, for it declares that the stockholder shall not be relieved of his liability by sale of his stock. There can be no sale of stock after the expiration of the charter, for there can be no stock in a dead corporation. The 16th section of the Act looks tp the failure of the bank, and not to its dissolution. The stockholders who may have sold their stock within six months prior to its failure are held liable. The whole section contemplates an existing, but insolvent bank, one unable to pay its debt. This Court has given a construction to the terms “ ultimate liability” as used in this charter. It means a secondary liability, neither more nor less, in substance, than an endorsement in the second instance, by which tjie holder of a note is bound to prosecute the maker to aprima facie case of legal insolvency only, orto assign some satisfactory excuse “for not doing so.” Thornton vs. Lane, 11 Ga. R. 517.
Such is the meaning affixed to the terms “ ultimate liability.” Upon that construction of them is the plaintiff now proceeding. It does not mean in this charter, that the stockholders shall be liable to redeem such notes as are in circulation after the expiration of the charter. If so, the suit in this case could not have been instituted until after that time. This Court has held that the remedy may be pursued after the judgment of forfeiture, but it has not decided that it could be pursued after the expiration of the law. The judgment of the Court, was upon the effect of the judgment of forfeiture upon the debts, and it is true the Court said, that the remedy against stockholders might be pursued after the final dissolution of the corporation which would include a dissolution by the expiration of the charter, but that was not the judgment of the Court, because the record did not make the point. Thornton vs. Lane, 11 Ga. R. 496.
*75 It could not have made it, for the charter had not then expired. Now there is a difference between the effect of the judgment of forfeiture rendered against this bank, and the expiration of the charter. At the expiration of the charter, the corporate body was dissolved. By the judgment of forfeiture it was not. I expressed my opinion pretty fully on the effect of the judgment of forfeiture in the case of Robison vs Lane, 19 Ga. R. 360. That judgment, as I then said, “did not annul .the charter, and. amounted to no more than a judgment of seizure of the liberties, franchises, &c. into the hands of tin State, and that the “ bank” be prohibited from using any of the franchises, &c. conferred on the grantees in the charter, and from intermeddling therewith.” If it did not dissolve the corporation, the debts did not become extinct, it left the statute in full force; the proceeding instituted against the bank for the forfeiture of the charter was an information in the nature of a writ of quo ‘warranto, and the judgment on such an information, is not a judgment of dissolution but of seizure and ouster. But if the effect of the judgment had been to dissolve and annihilate the corporate body, the Legislature protected the property, effects of all- sorts, debts, obligations and contracts of the corporation, from the effects of the common law rule, by providing for their preservation, first for the. creditors, next for the stockholders. The first Act of our Legislature which authorized proceedings for the forfeiture of bank charters, aimed no doubt at their annihilation, but it intended also to preserve the assets for the benefit of the creditors, for it directed them to be immediately placed in the hands of a receiver for that purpose. Without pausing to en-quire whether, upon a judgment dissolving the corporation, the provisions of this Act would not have saved the debts from extinguishment, I will say that prior to the judgment of forfeiture, relied on, in this case, which was pronounced in 1843, the Legislature passed an Act declaring that the judgment should dissolve the corporation for all purposes *76 whatsoever, saving and excepting as to its power, in its corporate name, to collect and pay its debts/5 &c. &c. The Judge was directed to incorporate the exception in his judgment, and although he did not do it, the judgment which he did pronounce, being a judgment of seizure only, as I have elsewhere shown, had precisely the same effect and no greater. Robison vs. Lane, 19 Ga. R. 360. It was not a judgment of dissolution and did not extinguish the debts, and I so said in that case. It certainly did not put an end to the unexpired charter and therefore left the law offull force against the stockholder. As long as the Act existed his liability remained. But the charier expiring, the law expired, and being one and entire, passed for a single purpose, the whole Act expired, there being no expression in it to keep it alive for any purpose.
But there is a view to be presented of this demand regarded as a statutory liability only, which would aid much in the construction of the charter, if there were anything ambiguous in it to construe. In the charters of several of the banks of this State, in which the stockholders are made individually liable, it is declared that the persons and property of the stockholders shall, at all times, be pledged and bound for the ultimate redemption of all notes or bills issued, &c. Here the terms “ at all times55 and “ ultimate/5 are used, one fixing the nature of the liability, and the other, its duration. Considering these charters as mere statutes, disconnected from the idea of contract, it follows that when the statute declares that the- persons and property of the stockholders shall be at all times bound and pledged for the ultimate redemption of notes, &c., there can be no limit in point of time, on the liability of the stockholders, for by positive enactment it is continued to the future indefinitely.
But in charters where the words “ at all times55 do not occur, the statutes do not create a perpetual liability, but that matter is left to the control of the common law.
Hence the words “ at 'all times55 not appearing in the charter of the Planter’s and Mechanics5 Bank of Columbus, it *77 follows that that statute has no effect to extend the liability beyond the time at which, according to the principle of the common law, it would end. .1 have already shown that according to these principles it ends with the expiration of the charter. This Court has decided, as already remarked, a case, Moultrie et al. vs. Hoge, 21 Ga. R. 513, but slightly differing from the one before us. The difference is in thefacts of the case, rather than in principle. That was an action against the directors for an excessive issue of bank notes happening during their administration. ■ The provision in the charter was extraordinary, as it made directors who were absent, or who being present dissented from the resolution or act by which the excess was created, equally liable with those on whom the responsibility rested. The charter prescribed the remedy j an action of debt. It declared that the liability imposed on the directors should not exempt the corporation or its property from being also liable for and chargeable with the excess. The same charter enacted that the persons and property of the stockholders should, at all times, be pledged and bound for the ultimate redemption of their notes, &c. There is no enactment that the directors should be at all times liable. We held in that case that the liability of the directors expired with the charter. Sickness prevented my writing out my opinion concurring in the judgment pronounced in that case. The Courts cannot enforce a right which has no foundation except in the defunct provisions of an expired statute. The statute incorporating the Planter’s and Mechanics’ Bank of Columbus, having expired, and there being no provision in that or any other statute for continuing the liability of the defendant as a stockholder, if his liability were statutory entirely, it ceased with the expiration of the statute and cannot be enforced.
I will now proceed to examine the charter as a contract, and ascertain the defendant’s liability in that aspect of the case. In England private acts of Parliament are regarded in the light of contracts made by the Legislature on behalf *78 of every person interested in anything to be done under them. Dwarris on Stat., 651. Whether an act is public or private, does not depend on its having a clause declaring it a public act, but upon the nature and substance of the case. lb. In this country acts of incorporation have been decided by the highest authority to be contracts, and contracts of such obligation and force that the Legislature can neither repeal or modify them unless the power to do so be reserved in them. In England, Parliament has that power, and exercises it on proper occasions, whether the charter of incorporation proceed from the crown or from Parliament. The corporations accept their charters, subject to this power in Parliament, and the law, therefore, in this respect enters into all such contracts and makes a part of them.
It is probably a misfortune that any other decision was ever made in this country. All charters in this country are by Legislative acts, but they are nevertheless contracts.
The charter now under consideration was a contract. But the mere passing the act of incorporation did not make it a contract, although the names of certain persons were inserted therein as corporators. It was the subscription to the stock, or the acceptance of the charter which made it a contract; and, in determining upon that, each person acted on his own judgment, and is bound by the contract as he. made it. It is to be construed by the words, like all other contracts, according to the intention of both parties. That one of the parties is the Legislature does not vary the rule -of construction, nor does it give one party any greater power over the contract to add to its terms in any respect, than if both the contracting parties were persons. And the same may be said, if the contract be made in reference to an Act of the Legislature. The change of that Aet cannot add to the obligation of either party. Those principles were acted on in the case of the Union Bank of Maryland vs. Ridgly. That was a suit by|the plaintiff against the defendant as one of the sureties in the bond of Ralph Higginbottom, as *79 cashier of the bank. The bank was chartered by the Legislature of Maryland in the year 1804. The Act was to continue in force until the expiration of the year eighteen hundred and fifteen, and until the end of the next session of the Assembly thereafter. Ralph Higginbottom was appointed cashier on the first day of March, 1805.
. On the 30th day of March, 1805,- he gave the bond and continued to be cashier and act in the capacity of cashier until the 25th day of May, 1819. In 1815 the Legislature extended the charter te the 12th day of January, 1835. Several breaches of the bond were assigned, such as embezzlement, false discountings, &c., by Higginbottom as cashier, extending down to the 25th day of May, 1819. It was contended that the bond was only co-extensive with the original Act of incorporation, which 'expired on the 6th February, 1817, being the end of the session of the Assembly next after the expiration of the year eighteen hundred and fifteen, and that the defendant was not liable for violations of the condition which took place after the expiration of the original charter. The Court in that case said that, in construing the bond, they must look to the intention of the parties at the time it was executed ; that the intention, when ascertained, must govern the contract of the parties. “ When the bond was executed, then, the Act of incorporation under which it was given was limited in its duration to the 6th of February, 1817. The bond looked to the time for which Higginbottom was appointed, and that was restricted by the limitation of the charter as it then stood. What then was the intention of the parties ? and where is that intention to be found ? Where but in the original Act of incorporation, under which the bond was executed ? And looking to that Act, it would seem very clear that no responsibility was contemplated beyond the period of its duration” — there was no idea then of carrying it any further. “ The parties knew the legal duration of the charter expressed upon the face of it; they contracted with a view to that duration and the contract *80 must be expounded as the law was when the contract was made.5’ 1 Gill and, Johnson 324—433. Every person who examines a charter for a bank for the purpose of becoming a stockholder, no doubt, considers all its provisions well and scrutinizes none more closely than that which is to fix on him a personal liability, in certain events; and he contracts subject to the law which applies to such things. It is a rule of law that no personal liability attaches to the individual members of an aggregate corporation for the debts of the corporation. It is another rule of law that, on the dissolution of a corporation of that sort the debts due to and by it are extinguished. It is another rule of law that on the expiration of the charter of an aggregate corporation, the corporation is dissolved, unless there be a provision therein to preserve its existence beyond that period for some special object. These are the rules of the common law, but they may be changed by statute. The insertion of a clause in an Act of incorporation, that stockholders and their property shall be liable for the debts, or any part of them, of the corporation, is an improvement upon old charters for the public benefit and binds the corporator to the full extent of his undertaking. What was the undertaking of the stockholder who became a subscriber to stock in the Planters and Mechanics Bank of Columbus ? How did he intend to bind himself? He intended to bind himself ratably with the other stockholders, in proportion to the amount and value of his stock for the ultimate payment of the debts of the bank, due by bill or note. This Court has held that in that respect, he construed his liability correctly. What construction did he place on the word “ ultimate?” He ought to have construed it as this Court has construed it, as a secondary liability. The plaintiff in this case has construed it in the same way, for he has instituted suit against the bank; he has obtained judgment, and had execution issued against the bank; on ' that execution the sheriff has made the return of “ no property,” and on these premises the plaintiff avers that an ac *81 tion hath accrued to him to have the amount sued for, from the defendant. That construction is right also. If this construction be right, then, the notes or bills issued by the bank and now sued on, were debts due by the bank during its existence. The notes constituted the principal debt and the bank was the principal debtor. Tbe personal undertaking of the stockholder in the 11th section of the charter was accessory to it. According to one of the rules of law stated by me above, the debts due by the bank, would have become extinguished at the expiration of the charter, the law remaining unaltered. The extinction of the principal obligation, necessarily induces that of the accessory. It is of the nature of an accessory obligation that it cannot exist without its principal. Evans’ Poth. on Ob. 209. This rule of the French law applies certainly to sureties proper; but it is the common sense of ail accessory obligations, and Mr. Chitty sajrs it has its full influence in the English Courts. But the stockholder by agreement, might extend the duration of his accessory obligation beyond the period at which the principal obligation would become extinct. But the charter which is his contract, is not to be so construed unless there is some expression therein which authorizes the inference of such intention.
It cannot be inferred from the fact that the corporation being an artificial person, the debt is necessarily extinguished against it, there being nothing in the charter to prevent that effect by its dissolution, but that he being a natural person is capable of being sued. Nothing but a contract express or implied that these debts should remain debts against him can authorize their recovery from him, after they have become extinct, as to the party primarily liable. There is no express contract certainly to that effect. It cannot be inferred from the engagement to the tdtimate payment of the notes and bills. That word “ultimate” has been construed by this Court. Now what right had the subscribing stockholder to interpret that term as fixing on him a temporary liability, *82 ending with the charter, and. not a permanent liability ? He was justified by a very fair rale of interpretation, and one which would seem to settle the matter- very conclusively. During the session of 1836, the Legislature passed five Acts incorporating banks. The Act under consideration was one of them. Its provisions have already been stated. The stockholders could not relieve themselves from liability by the sale of their stock except by giving sixty days notice in a public gazette, and they were to be, nevertheless, liable if the bank failed within six months of the sale. The charter of the Ocmulgee Bank held the persons and property of the stockholders for ¿he time being, pledged and bound for the ultimate payment of the bills and notes of the bank. As regards the duration of the ultimate liability of the stock, holders, the terms of the charters, those of the Planter’s and Mechanics’ Bank of Columbus and the Ocmulgee Bank are the same. The charters of the Bank of Brunswick and of the Western Bank of Georgia declare that the persons and property-of the stockholders shall, at all times, be pledged and bound in proportion to the number of dollars issued upon each of the shares, &c. &c. The Bank of St. Marys has no personal liability clause. Here were five charters for banks passed by the same Legislature. Persons desirous of vesting funds in bank stock, knowing that when they became subscribers for the stock, the charter would become their contract, would, of course, look to the provisions of each Act. In some of them they would find that, on subscription, they would become bound “at all times” for the ultimate redemption of the notes and bills of the banks. In others they would find that they would not be bound at all times, for their ultimate redemption. There is a difference, manifestly. The omission of the words “ at all times” in one charter and the insertion of them in another, in reference to the same thing — the personal liability of the stockholder — certainly indicate strongly that there is to be no limit to the liability in the one case, and that in the other there is to be a restricted *83 liability. Every man would so construe it, and would know that if he subscribed- to the charter declaring that “ at all times” he would be liable &c., he would enter into a very different contract, from that to which he would become a party by subscribing to a charter which contained no such words. The duration of a charter and of the obligations it imposes on those who make it their contract is a matter of much moment. Some men might be willing to subscribe for stock in a bank, whose charter was limited to a term of years, say to fifteen or twenty years, the end of which they might probably live to see; when they might not subscribe for stock in a bank having a permanent charter, which must necessarily survive them. They might be unwilling t® leave to dis, interested representatives, or young and inexperienced descendants, the duty of looking after and supervising interests which it might require the most vigilant and skillful persons to protect. The stockholders in the Planter’s and Mechanics’ Bank of Columbus, contracted, then, for a liability of limited duration, as the words “at all times” are not to be found in the charter, in connection with the personal liability of the stockholders, and the duration of the charter became a material part of the contract. But it is said that by the Act of December 15th, 1855, Ramp’s, 55-56, 226, the assets of expired corporations are preserved for the creditors and stockholders, and the stockholder cannot be injured by having his liability continued. This Court is unanimously of opinion that that Act does not extend the duration of the individual liability of stockholders. That remains to be determined by the original charter. As was said in the case, in Harris & Gills’ Rep., already referred to, “ What the contract was, at the time it was entered into, so it remains.” In that case, it was said, the Act extending the duration of the charter could not enlarge the liability of the defendant,without his consent-The principle is incontestable that the terms of a contract cannot.be altered without the consent of the parties to it. They are respectively the only judges of the effect, of a *84 change, and it cannot be made without their consent. The Act of ’55 does not propose to extend the duration of the charters, but only to preserve the real and personal estate and assets of- all descriptions from the effects of the common law rule of reversion, forfeiture, and extinction. It was on the principle I have been discussing that it was decided, in the case of the Hartford & New Haven Railroad Company vs. Croswell, 5. Hill’s Rep. 287, that a company incorporated for a particular object, cannot be authorized to engage in any other and new enterprise, so as to bind a stockholder, without his assent. The subscriber in the original company is regarded as.having vested his money in a particular enterprise, and neither the Legislature nor the company have the right to divert it from that object and apply it to other purposes without his assent.
The case cited from the Maryland reports was the case of a surety, and the liability of a surety is stricti juris’’ but the cardinal rule for expounding his contract is the same as that for expounding any other contract — the intention of the parties ; and I referred to that case for the purpose only of showing the rule and its application t® cases, where statutes affect contracts. In many of the cases, heretofore decided, stockholders have been referred to as sureties, and if that be the correct light in which they should be viewed, the law of sureties should be applied to them. I am not disposed to consider them as strictly sureties, for a surety is not interested in the consideration of the contract. Every stockholder, in this bank is interested in the consideration. My brothers, Lumpkin and Benning, have both expressed the opinion that they are sureties; but the former in a more recent opinion, has questioned the propriety of so considering them. In one view of the case, however, we are all agreed: that the liability is secondary and that is their contract. The Legislative construction is the same. By the Act of 1841, uto facilitate the collection of debts from incorporations and the stockholders thereof’ an execution could not be issued against stock *85 holders, until an execution had been first sued out against the corporation and areturn of “no corporate property to be found” had been made thereon by the proper officers. Cobb 541.
There being nothing in the charter of the Planters and Mechanics Bank of Columbus, to continue any of its powers or faculties, or to authorize the Legislature to continue them, without the assent of the stockholders, so as to prolong or perpetuate their personal liabilities, after the expiration of the charter, no Act of the General Assembly, however efficacious it may be, to save the property and effects of expired corporations for the benefit of their creditors and stockholders, can extend the duration of the personal liability of stockholders, without their consent, beyond the period, at which, according to the stipulations of the charter it was to end. Whether the stockholders are to be viewed as principals or sureties in the contract, the Legislature can not add to the terms of their obligation, without their consent, stipulations which did not belong to it when it was entered into. If by the charter as it was passed, the debts of the bank according to the existing law, would have become extinct on its expiration ; and the stockholders being only secondarily liable, whether as sureties or not, the'debt could not have been recovered against them ; except by express agreement, or one so strongly implied that the intention to be bound, could not be mistaken; the passing of a subsequent Act to preserve the debt from the effects of the then existing law as against the bank, cannot superadd terms to the stockholder’s contract. That stands as it was when entered into. As was truly said in the opinien of the Court, delivered in the case of Mumma vs. The Potomac Company, 8 Pet. 281, “ every creditor must be presumed to understand the nature and incidents of such a body politic,” (a corporation,) “ and contract with reference to them.” That the creditor does not understand the contract, is no reason, in law for the Courts to change or modify it, to conform to his notions of it. It must stand as the parties made it. Cases in New York have *86 been referred to as establishing the right to continue suits against the stockholders, on individual liability stipulations, or laws, after the dissolution of corporations. Their authority rests upon a New York statute which is not of force here. By that statute the individual liability commences at the dissolution of the corporation. In this case the individual liability ends with its dissolution. It was not the law in New York, that such a liability survived the dissolution, until the Legislature of that State passed the Act. It cannot be law here until the Legislature of Georgia passes a similar Act; .Ies:: it makes such liability a part of the Act of incorporate u when passed, as it has done in some instances, by declaring that the stockholders shall "at all times be liable.” One inconvenience, indeed injustice, may result to creditors by the protraction of suits against stockholders, commenced in time, but kept in Court by defenses until the expiration of the charter. That is the fault of the law, and it ought to be amended. Every man who is sued, is entitled to make his defense, but the law ought not to permit the mere persistence in a defense to produce a lapse of right; but at the same time care should be taken to prevent the gross injustice of continuing a remedy against a party secondarily liable, without affording him the means of redress against the party primarily liable. There has been no adjudication of a case under one of the charters- which declares that the stockholders shall at all times, be liable, but it is by no means clear that the Courts would not be bound to construe the charter as saving the remedies against the stockholders and holding the corporate assets liable, while for all other purposes, the corporation was dissolved. It is time enough, however, to consider that question when it arises. As unjust as the law is, which admits a defendant’s protracted defense to defeat the plaintiff’s right, after incurring expenses, under a public law, in prosecuting it, it is unquestionable law and has been enforced always. In the case of Yeaton vs. The United States, 8 Cranch’s Reps. 281, Chief Justice *87 Marshall, delivering the opinion of the Court, said “it has long been settled that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some provision be made for that purpose, by statute.” Congress had passed an Act (on the 38th Feb. 1806,) prohibiting intercourse with certain parts of the island of St. Domingo. The Act was limited to one year. By an Act of Feb. 1807, it was continued until the end of the next session of Congress which expired on the 36th April, 1808. The schooner General Pinckney was libelled on the 6th Jan. 1807? for a violation of that Act, and condemned in the District Court on the S3d of July following, which condemnation was affirmed in the Circuit Court on the 7th of Nov. From that sentence the claimants appealed to the Supreme Court of the United States on the 1st Monday in Feb. 1808, where the cause was continued until Feb. Term, 1809. On the ground that the statute had expired, before the hearing in the Supreme Court of the United States, the whole cause having been brought up by appeal, unaffected by the condemnation, and there being no law then upon which the cause could be tried, the judgment of the Court below was reversed. The same decision, was made in the case of the schooner Rachel vs. The United States, after the sentence of condemnation was passed, and the vessel sold, and the proceeds paid over to the United States, while the Act on which the condemnation was pronounced was in force. The Act having expired before the cause was tried in the Supreme Court, that Court made an order for the restitution of the property to the claimant. 6 Cranch’s Reps. 339. These were cases on penal statutes, public, not private Acts, and having nothing in the nature of- contract about them, and are referred to simply as cases which show that Courts cannot extend a law after its expiration, to enforce a right to which the party became entitled under it, during its existence, although the case was delayed by a protracted defense. The conclusion then, ot *88 which I have come is, that the charter having expired, the right of the plaintiff in the Court below to pursue the defendant in this case, expired with it .•
That he contracted that liability in reference to the law, which at the time of subscription, would have extinguished the debts sued on, at the expiration of the charter, as the debts of the bank, the party primarily liable :
That the debts being extinguished as the debt of the party primarily liable, they would be extinguished as the debts of the party secondarily liable also :
That such being the contract of the party, no Act of the Legislature, subsequently passed, could vary it and extend the duration of his liability without his consent:
The Act of 1855, by changing ihe rule of the common law, in respect to the assets of dissolved corporations, did not convert the liability of the defendant, which by contract was limited in point of time, into a perpetual liability. That the defendant was transferee of the stock on which he is sought to be held liable does not vary the case, as the suit was instituted prior to the passing of the Act of 1855, and the transfer must of course, have preceded the suit. But I am not to be understood as holding, that if the defendant had taken the transfer of the stock subsequent to the passing of that Act, he would have been liable, and that in that respect, the contract of the original subscriber, would not have been his contract. I leave that question open.
I think therefore, that the request to charge the jury, as made by the counsel for the plaintiff in error in respect to the effect of the expiration of the charter on the debts sued on, ought to have been given by the Court, and that because of the refusal of the Court so to charge, the judgment of the Court below ought to be reversed. This decision is put on the ground herein stated, and not on the ground that for no cause can a stockholder in a bank or other corporation be sued after the expiration of its charter, or after its dissolution otherwise. All deceitful practicas by which others are defrauded *89 are condemned by the common law, and a party injured by such practices is afforded a remedy by the common law. Butin this action the party defendant is not charged with fraud, and is not called to defend himself against such charge. From evidence delivered in other cases which have-been reviewed before this Court, it is most manifest that the greatest frauds were committed in the organization of this bank, and in putting itin operation, by which billholders and other creditors, have been greatly damnified, and for which they are entitled to redress, whether the corporation has been dissolved or not. This liability depends, in no manner,upon a provision in the charter, but on other principles. Persons may be liable, in my judgment, even if they have been crafty enough, after committing 'a participation in the fraud, to sell their stock, and to relieve themselves from either statutory liability or personal liability, under the charter as their personal contract, by whatever name it may be called, by giving all notices, &c,, necessary to secure their exemption from personal liability under'their charter. If this fraud has contributed to the failure of the bank, or to depreciate in value a currency which they were authorized by law to substitute for coin, they are liable at common law, in the proper forum, to an injured party for the consequences. When a bank is chartered, organized, and proceeds to issue notes of circulation, the community have a right to presume that every thing has been done which is required by the charter to ensure their permanent credit, their safety and soundness as a currency. They have a right to presume also, that after it goes into operation, nothing will be done inconsistent with honesty and good faith to impair their credit and value. They have a right to presume that no part of the capital will be withdrawn by the stockholders who are not entitled to it, or any part of it, until creditors are paid, for whose benefit it was required to be paid in the first instance. When what ought to be done is not done, or what ought not to be done is done, and creditors are injured thereby, they are entitled to redress from *90 those at whose hands the injury was sustained, let it be called by whatever name — violations of duty, breach of trust, or fraud. In whatever light it is considered, it is a personal wrong and injustice t© those who suffer, not dependant on any charter regulations for remedy, and for which those at fault are liable. If stockholders and officers of banks do their duty, it is impossible for a bank to fail. If, in the first instance, they pay in specie the amount required to be paid, and allow it to remain as permanent capital; if they make no excessive issues of notes of circulation; if, in discounting notes, they see that the makers and endorsers are unquestionably solvent; if they loan on such terms that, at short notice of approaching difficulties in monetary affairs, they can make all their means available; and if they never become borrowers from themselves, the holders of their notes and other creditors will always be paid. If, by omitting to perform a legal duty, or if they do an illegal act, by which creditors are injured, there can be no question but they may be proceeded against in a manner, and by a proceeding, that will compel those to account who have done the wrong, and at o. tee give relief to all entitled to it, who will come in and aid the suit. A Court of Chancery, on a bill of that sort, can so regulate its proceedings, and adjust the rights and liabilities of the parties, by its decree, as to do ample justice to all, and compel individuals to account for frauds and wrongs, who have dishonestly abused the privileges granted a corporation, of which they were members, by fraud, to enrich themselves. All may be joined as plaintiffs, who are interested in the investigation ; all may be made defendants who are liable to respond ; and if, by the dissolution of the corporation during the pendency of the suit, the law terminates the liability of any of the parties, the suit may proceed against those whose liability arises from their wrongs or frauds, and against whom there is a remedy as old as the common law.

*91
Note by Judge McDonald.

In the year 1852, the counsel for the plaintiff in error, sent me a copy of the argument which he had prepared in this . and other cases, as I supposed, involving the points made in the record in this case, and did me the honor to ask my opinion on them, which I gave him in a letter hastily written. Among the points on which I gave him my opinion, was the effect of the statute of limitations on suits against stockholders in the bank. Before the case in which the foregoing opinion is delivered, was reached on the docket, the counsel for the defendant in error placed in my hands a copy of that part of the letter above alluded to, which applied to the statute of limitations. When the cause was called for argument, he made a motion in open Court that I would not preside. 1 declined presiding on two grounds: 1st. Because I had, in that letter, given an opinion very fully, on one of the points in the record, and which opinion I considered as having been given in each and every case against stockholders of that bank, to which it applied, and was therefore within the spirit of the rule on which every member of the Court had acted since the organization of the Court, to-wit: if he had been employed in a particular cause, when at the bar, he would not preside in that cause, if carried to the Supreme Court by writ of error. I had not been employed in any of the cases, and for that reason, it was insisted that I should preside; but if the reason be a good one, which would render it proper that a Judge who had been, when an attorney, employed in a particular cause, and had advocated a principle, not because it was his opinion, but because it was necessary to the success of his case, should withdraw, if that cause was carried to the Supreme Court, and not preside when it was heard, it was more proper that a Judge should not preside, whose opinion, while at the bar, had been given under no such influence.
2d. Because it might give rise to a practice of seeking the *92 opinion of legal gentlemen in particular cases; that the party-asking it, might use his exertions to place the gentleman who gave it, in a position where that opinion might benefit him. A Judge should discountenance, by as efficient means as are in his power, a course of this sort; and none seemed to me to be so effectual and proper, as to decline presiding, if promoted to the bench, in cases in which his opinion had been sought when at the bar. 1 will remark, that I consider the counsel who sought my opinion in these cases, incapable of acting from a motive of that sort.
After I had declined presiding in the case, a proposition was made in open Court, that I should preside with my brother Judges and hear the cause, on all points except the statute of limitations, the point on which I had expre. sed an opinion. It was assented to, and I did preside. Since the decision of the cause, I have received a letter from the counsel for the defendant in error, in which he states, in substance, that he is satisfied that Col. Hines Holt has in his possession my written opinion on the question of the extinguishment of the debts of a corporation on its dissolution, obtained at the same time, and in the same manner, as was my opinion on the question of the statute of limitations,and which in my judgment had rendered me incompetent to preside in this case. He did not know, at the time, that such was the fact, and supposed that it had escaped my recollection. Pie had made an unsuccessful effort to obtain a copy of the opinion, that he might communicate it to me. On receiving that letter, I immediately wrote to Col. Holt, saying to him he had my full permission to communicate to Col. Dougherty, or any one else, whatever I had written or said to him in relation to the bank cases. I requested him to furnish me with the originals or copies of all writings of mine, whether letters ox-other things, which he had or could control, containing any matter or thing relative to the said cases. He sent me the letter from which Col. Dougherty had made the extract, which he placed in my hands, at Court, as the only writing *93 he ever had from me on the subject. Col. Dougherty requested me, that, on obtaining from Col. Holt a copy of the opinion which I had given, if it should be such an one as it was understood to be, I would conform, as far as I could now do so, to the course pursued by me on the question of the statute of limitations. He was aware that the particular judgment was reversed, but he suggested, that, if I thought proper to do so, I could limit its effect to that case; and that by adhering to the course and the reasons given therefor, at the trial, prevent its effect on the trial of the same case and others of the like character, that I could arrest the effect of what I had held, and which is admitted universally to be wrong.
I have very fully considered this application, and the'reasons assigned for the request, and I will remark, that on reading the letter which I wrote to Col. Holt, in 1852, I found it was very full on many points involved in this case, and goes beyond the expression of an opinion of the effect of the dissolution of the corporation upon the debts of the bank. I cannot comply, however, with the request of the counsel, for various reasons:
1st. Upon objection being made to my presiding at the trial, I determined, for the reasons assigned, not to preside. My resolution extended to the whole case, and I should not have presideu to hear any part of it, but with the consent of counsel on both sides. The counsel for defendant in error assented. The reasons assigned for the request now made, was, that I had given a written opinion to Col. Holt, “ on the question of the extinguishment of the debts of a corporation on its dissolution.” On that question there is no disagreement among the members of this Court, nor in the legal profession, that I have ever heard. All concede it to be the law, that on the disssolution of a corporation its debts are extinguished.
In the next place, my judicial opinion on the precise pointis given in the published report of a case decided by this Court. Such an opinion could furnish no ground of objection to my presiding, it is true; but in this case, after I had declined pre *94 siding, the counsel might have refused his assent without assigning a reason. It was not like making an objection. He gave his consent, knowing the opinion I had expressed judicially.
But I went further in my letter to Col. Holt, than to express an opinion, that on the dissolution of the corporation, the debts became extinct. “ The plaintiff at law,” I say in that letter, “ prosecuted suits to judgment on the notes of the bank, and having failed to collect the amount, he seeks to collect the amount from the defendant at law, as a stockholder. Can he do this? He cannot, I most respectfully think.” I gave no reasons for that opinion. But it was expressed, and although I had forgotten writing so full a letter on the points which I discussed, I should not have presided on the trial without the consent of all the parties. That I gave this opinion on the point, in the manner 1 did, is not, in my opinion, now that it is brought to my notice, sufficient to upset the judgment I have pronounced in this case. If so, the expression of any forgotten opinion on a case with which I had no concern as counsel, and on a point which it appeared I had not investigated, would disqualify me for presiding, if that cause should be brought before this Court. . But if I had argued this point as fully as I did the statute of limitations, still I ought not to do the opposite party the injustice of yielding to the request made of me. That letter had been read before the Supreme Court, in the presence of the counsel. It was so stated in Court.' That, however, was unknown to me, but it certainly put the counsel in possession of the contents of the letter. The extract with which he-furnished me, is from the same letter, and I must presume that he acquainted himself with the contents of the entire letter when he made the extract. If he had forgotten it, after having seen it so much more recently than I had, with a powerful motive to remember it, it is not remarkable that it had passed wholly from my mind, who had no reason to remember it. I cannot comply with the novel request of the counsel, but leave *95 the opinion and the judgment it was intended to support, to stand for whatever they are worth. I have not the slightest reason to question the soundness of the legal principles decided.
Columbus, Jan. 4th, 1858.

Hon. Chais J. McDonald:

Sir : In a note to your written opinion in the case of Beall vs. Robison, as published in pamphlet form, giving your reasons for not complying with my request, as to limiting your judgment under the circumstances, to that particular case; I notice that you say, “ that letter” (meaning the one written by yourself to Col. Holt before your election, containing your opinion in the Bank cases) “ had been read before the Supreme Court in the presence of counsel. It was so stated in Court. That however was unknown to me, but certainly put counsel in possession of the contents of the letter.” You of course intend to be understood by the words “ in the presence of counsel,” to mean in my presence. Such is not the fact. The extract, a copy of which I furnished you, was read before the Court, but no other portion of that letter. That part containing your opinions, that the billholder could not recover, and that his debt was extinguished, &c., was never read in my presence, before the Court or any where else. Nor was it ever stated in Court in my presence, that the letter had been so read. The manner and connection in which the statement referred to is made by you, is well calculated, and in fact, does me very great injustice. As to your inferences, I have nothing to say. Perhaps you have the right to draw just such as you think proper. But when you come to state the facts from which they are drawn, I have the right to be correctly represented.
As the opinion referred to, as is understood, is in advance of many cases decided before it; I presume it has not as yet been authoritatively published in the Reports. I have thought it proper to bring this matter to your notice, that an *96 opportunity may be afforded you of making the necessary correction.
Yours, &c.
W. DOUGHERTY.
Marietta, 7th January, 1859.

Col. W. Dougherty:

I have received yours of 4th January 1858 — manifestly a mistake in the date, as to the year. My recollection of the statement in Court is such as I have stated it in my published note to which you refer. My recollection is further, that you were present when it was made, just as stated. I understood the counsel as speaking of the letter, the whole letter. If I find that I am mistaken in this, I will cheerfully correct it in an additional note, and if I find there is a mere difference of recollection between us, I will in a note to the decision in the Reports, give the account you give me of it in your letter with a great deal of pleasure. I have no disposition to do you the slightest injustice. I spoke of nothing but the statement in Court, as I had no personal knowledge of the reading of the letter or any part of it, before the Court at the time referred to by the counsel.
I have the honor to be, yours, &c.
ci-iarles j. McDonald.